CATHERINE WALROD, v. THE DES MOINES FIRE INSURANCE COMPANY, Appellant.

Insurance: FRAUD: EVIDENCE. In this action upon a policy of fire insurance the evidence is held to require submission of the issue of fraud, arising from alleged misrepresentation of the character and value of the building.

Same: CHARACTER AND OCCUPANCY OF BUILDING: FALSE REPRESENTATIONS: FORFEITURE. Where the first floor of a building had been used as a creamery, but such use was terminated and the windows boarded up, and the second story was divided into rooms and occupied by a single man as his residence, and the agent of the insurance company saw the condition of the building and knew the character of its occupancy, the question of its fraudulent misrepresentation as a dwelling was for the jury; especially as such description in the application was made by the agent of the company, and his knowledge of the character and occupancy of the building was chargeable to the company. The fact that the occupant of the building was temporarily absent at the time of the fire did not render the building vacant within the meaning of the policy.

Same: AMOUNT OF LOSS: EVIDENCE. In this action for damage by fire to a brick building, in which it appeared that the walls were left standing, though in a damaged condition, the evidence regarding the salvage is held sufficient to enable the jury to determine the amount of the loss, although there was no evidence of the value or cost of taking the brick from the walls, except as to the value of like brick on the market.

Same: VALUE OF PROPERTY: PRESUMPTION: INSTRUCTION. Although the court instructed that the law presumes the value of a building to be the sum for which it was insured, instead of following the

language of the statute by saying that the amount stated in the policy should be received as *prima facie* evidence of the insurable value, was not prejudicial, where the value found by the jury was much less than the amount of the indemnity; especially where the terms of the statute were clearly stated in another instruction.

*Appeal from Webster District Court.*—HON. C. G. LEE, Judge.

THURSDAY, MARCH 13, 1913.

ACTION on insurance policy for loss by fire resulted in a judgment against defendant, from which it appeals.— *Affirmed.*

*H. W. Byers,* and *Kelleher & O'Connor,* for appellant.

*Healy, Burnquist & Thomas,* for appellee.

LADD, J.—The building was of hollow brick, with shingle roof. The main part was about thirty feet wide, forty feet long, and twenty-two feet high, to which was attached an engine room twenty feet by twenty-two feet and thirteen feet high. The latter, with the first floor of the main building, had been constructed for use as a creamery, while the second floor of the main building was finished for occupancy as a dwelling. Use as a creamery continued from 1899, when built, until 1904, when it ceased, and the machinery was removed. In 1905 the building, with an acre of ground on which it stood, was sold by the owner to the plaintiff, who had acquired the farm out of which this acre had been taken. In December, 1909, she procured a policy of insurance in which defendant contracted to indemnify her in event of loss or damage to the building by fire in the sum of $2,000. It burned July 22, 1910, and in this action recovery for the loss is sought.

I. The defense that the policy was procured by fraud

in that plaintiff misrepresented the character and value of
the building was fairly submitted to the jury,
and the evidence was such that the verdict
ought not to be disturbed. Though the orig-
inal cost of the building in 1899 was about $1,465, and
plaintiff paid but $375, there was evidence, though contro-
verted, that it was in fact repaired immediately prior to
the fire, and that, owing to the increase in the cost of labor
and material, it was then worth $3,000 or more. Moreover,
the property might have been regarded more valuable as a
part of plaintiff's farm than in connection with a detached
acre.

1. INSURANCE:
   fraud: evi-
   dence.

A family had occupied the second story a portion of
the time since acquired by plaintiff, and Waters, who was
a single man and an employee of plaintiff, was in actual
occupancy at the time the policy was issued, as well as when
the building was destroyed by fire, though then temporarily
absent. The defendant's agent had not been in the build-
ing, but had seen it with windows and doors below covered
with boards nailed on the outside, and the outside stairway
to the second story, and was informed, at the time the appli-
cation was made, that the occupancy was by Waters. In
view of this state of the record, it is manifest that the issue
as to whether the value and character of the building as a
dwelling had been misrepresented by plaintiff in her appli-
cation with the design of deceiving the insurer was for the
jury to determine, and there was no error in so ruling.

II. The building was represented as a dwelling. The
upper story had been constructed and partitioned into six
rooms for that purpose, and had never been
occupied otherwise. The first story, with the
wing, was used several years as a creamery,
but such use had been abandoned over four
years prior to the issuance of the policy; and, though not
remodeled, there appears to have been no intention to oc-
cupy it again as a creamery. That it was not then occupied

2. SAME: char-
   acter and occu-
   pancy of build-
   ing: false rep-
   resentations:
   forfeiture.

was as apparent to the agent as any one, for the doors and windows had been covered with boards nailed over them, and he must have understood that the occupancy of Waters was of the upper story and of a character usual to bachelors in his situation. The agents knowledge was imputed to the company (*Gurnett v. Insurance Co.*, 124 Iowa, 547); and there was little room for deception as to the character of the building insured. Indeed, the designation of "dwelling house" cannot be denounced as entirely a misnomer, for the building had no other use; and, if the description was not sufficiently specific, it was as the agent, who prepared the application, inserted it. The defendant, then, is not in a situation to complain of being misled as to the kind of building insured or of the nature of its occupancy. That Waters may have been absent temporarily at the time of the fire did not render the building vacant within the meaning of the policy. *McMurray v. Insurance Co.*, 87 Iowa, 453.

III. The building was destroyed by fire—that is, all of the wooden portion thereof, such as window and door frames, roof and partitions, but the brick walls, except over the doors and windows, were left standing—and it is contended that no evidence was introduced from which the value, if any, of the brick or walls left after the fire might have been ascertained by the jury. The court instructed the jury that: "And, if it is shown by a preponderance of the evidence that the building was totally destroyed, the actual value, not exceeding $2,000, of the building will represent the amount of plaintiff's loss; but, if it is not so shown by the evidence, the amount of plaintiff's loss will be represented by the difference between the actual value of the building at the time of the fire and the actual value of the portions or parts of the building remaining after the fire." If, then, there was some salvage, it was important to ascertain its value, Plaintiff's husband testified that there were "just the brick standing and some fell down. It was burned down. Every-

3. SAME: amount of loss: evidence.

thing had burned, except the brick." Sherman, her son-in-law, that: "The only thing there was to burn was the floors and the partition and the roof and the casing of the door and windows." Waters that the walls looked in good shape and were "just like any building that has been burned. The walls are just as good as before the fire. The fire burned them and cracked the brick in some places, and some places standing. They were down over the doors and over the windows. . . . The place where the walls are not in good shape now is on the northeast corner of it. It has come down, I noticed the last time. I do not know how much is fallen out there, quite a hole, two feet square or bigger. I did not measure it or was not looking for that particular thing, so as to know, but it has come out there. I know there is a notch in the wall. There is probably a dozen hollow blocks fallen out at that place, and probably a good many more, except for that notch and where the walls are loosened around the windows and doors. I don't know whether every place else the walls are still standing. I have not been out there for six months. Q. How were they after the fire? A. They stood up there pretty good for several days. There was quite a number of blocks broken. I do not know as there were one hundred in the building. I did not count them. Probably there were as many as a hundred in the whole building. There might be 1,000."

No evidence of the cost of taking the hollow brick from the wall was adduced, nor was their value, save as this may have appeared from the testimony of the value of hollow brick on the market. The dimensions of the building were shown, and also of the brick, so that, as they were laid in the wall but one thickness, the number of good brick might have been ascertained approximately, and, from the value of new blocks, the value of the salvage estimated. That the expense of removing the brick from the walls was not proven can hardly be said to have been prejudicial to defendant; and, if it desired a more accurate basis of computation, it had the

opportunity of furnishing data therefor. In the absence of this, however, we are inclined to hold that enough was before the jury to enable them, as men of average experience to ascertain the damages occasioned by the fire.

IV. The court told the jury that the law presumes that the building was of the value for which insured, instead of following the statute by saying that the amount stated in the policy should be received as *prima facie* evidence of the insurable value of the property. Conceding these expressions to be different. the error, if any, was without prejudice, as the jury concluded that the property was worth little more than one-half the indemnity stipulated. Moreover, in the fourth instruction, the terms of the statute were clearly stated. It is also contended that the verdict is excessive. There was evidence to support it, and, though there is much room for difference of opinion, we are not at liberty to interfere.

4. SAME: value of property: presumption: instruction.

The judgment is *Affirmed.*