C. M. Syck, Plaintiff, and Lyman D. Baird, Intervenor,
Appellants, v. William Bossingham, Appellee.

Conversion: stock of goods: evidence. Plaintiff purchased a
stock of goods, taking a bill of sale which was improperly ac-
knowledged and never recorded, and his brother went into
possession.    Thereafter he gave a mortgage on the stock to
secure a note signed by himself and brother for the purchase
price, which was duly recorded and assigned to the intervener.
Defendant claimed the goods under an attachment against
plaintiff's brother; plaintiff admitted that he did not own the
goods but claimed that the bill of sale was in fact a mortgage
to secure him as surety on the note.    It also appeared that
most of the goods covered by the mortgage had been sold and
the remainder mingled with another stock owned by the
brother of plaintiff.    Held, that in an action for conversion
a verdict was properly directed for defendant.

Stock of Goods: mortgage: presumption as to title. The exe-
cution of a chattel mortgage does not raise the presumption
that the mortgagor is the owner of the goods covered by the
mortgage, especially as against one not a party to the mortgage.

*Appeal from Kossuth District Court.*—Hon. W. B. Quar-
ton, Judge.

Thursday, May 14, 1903.

Action for the conversion of certain personal property.
Defendant claimed the goods under an attachment sale
thereof as the property of T. B. Syck. Lyman D. Baird

intervened, claiming possession of the property under a chattel mortgage executed by plaintiff to one Stilson, and by Stilson assigned to the intervener. At the conclusion of the evidence the trial court directed a verdict for defendant, and plaintiff and intervener appeals.—*Affirmed.*

*Clarke & Cohenour* for plaintiff appellant.

*E. H. Clarke* for intervener appellant.

*F. M. Curtis* and *B. E. Kelly* for appellee.

DEEMER, J.—Complaint is made of a ruling on a motion to strike parts of defendant's answer to the petition of intervention. As the case did not go to the jury, and as the matter complained of did not go to the merits of the controversy, we have no occasion to rule on the complaint.

On the 14th day of February, 1898, one A. K. Sutton made what purports to be a bill of sale of "a stock of clothing, furniture, and fixtures, now in store at Belmond, Iowa," to C. M. Syck for the expressed consideration of $5,071.17. This bill of sale was not properly acknowledged, nor was it ever recorded. T. B. Syck, a brother of C. M., went into possession of the goods said to have been covered by this bill of sale. On the said 14th day of February, C. M. Syck, who resides in Austin, Minn., made what purports to be a chattel mortgage to A. R. Stilson to secure a note of the same date, signed by C. M. and T. B. Syck, for the sum of $448.17. This mortgage described the goods covered thereby as follows: "All the stock of goods, consisting of clothing, furniture, and fixtures, described in an invoice thereof dated February 11, 1898, being all the stock and fixtures now contained in the frame store building situated on the Main street at Belmond, Iowa, being the same stock of goods this day sold to the said C. M. Syck by the said party of the second part; all of the said property being now in possession of said first party,

in the village of Belmond, county of Wright, and state of Iowa, and free from all incumbrances." This mortgage was duly filed for record with the recorder of Wright county, Iowa, in which the town of Belmond is situated, on February 16, 1898. Thereafter, and on the 23d day of February, 1898, Stilson, by written instrument, assigned the aforesaid note and chattel mortgage to intervener, Lyman D. Baird, for the consideration of $400. On February 27, 1899, defendant brought suit in the Kossuth county district court against T. B. Syck and Emma, his wife, to recover the sum of $800, and sued out a writ of attachment, which was levied on the property in dispute, which was then in the town of Hobart, in Kossuth county. Judgment was obtained against the defendants in that action for the sum of $939.39, and the attached property was sold to defendant under a special execution. Plaintiff, as we have said, brought action against defendant for the conversion of the goods, and Baird intervened, claiming that he was entitled to the possession thereof under the chattel mortgage assigned to him by Stilson. Defendant avers that the title to the goods was in fact in T. B. Syck, or Emma, his wife; that he had no notice or knowledge of the alleged bill of sale; that T. B. Syck was at all times in possession of the goods; and that any apparent title O. M. Syck may may have had in the goods was fraudulent and void as to the creditors of T. B. and Emma Syck.

There are several reasons why the motion to direct was properly sustained. In the first place, plaintiff admits himself that he does not own the goods or any part thereof. 

1. CONVERSION: stock of goods evidence. He claims that the Stilson bill of sale was in fact a mortgage made to him to secure him for signing the $448 and other notes executed by his brother T. B. for the balance of the purchase price of the Belmond goods; that the brother T. B. traded a farm for the goods, which was sufficient in value to cover the exchange value of the stock; and that he never in fact owned

the goods. Moreover, T. B. was at all times in possession of the Belmond stock, claiming to be the owner thereof, and the Stilson bill of sale was never recorded.

Further, it appears that most of the goods in the Belmond stock were sold, and the remainder were removed to Hobart, and there mixed with another stock of goods which T. B. Syck, or his wife, or both of them, obtained from defendant, Bossingham, through another trade.

Aside from this, plaintiff did not sufficiently identify the Belmond goods to justify an action for conversion against the defendant. For these reasons, and others which might be suggested, plaintiff was clearly not entitled to have his case for conversion submitted to the jury.

II. As to the intervener's claim: He has a mortgage upon some goods in Belmond executed by plaintiff, C. M. Syck. If this mortgage was not executed by the owner of the goods, it is, of course, of no validity. At any rate, his claim is that C. M. Syck was the owner of the goods, which were at Belmond, and that as such owner he made the mortgage relied upon by him, and as such mortgagee he is entitled to recover the goods for the conversion of which this suit was brought. The evidence from all of the Sycks is that T. B. Syck was the owner of the Belmond stock, and there is, of course, no claim that intervener ever had any lien upon the goods which T. B. Syck or his wife acquired from the defendant. The only evidence of ownership in plaintiff is the fact that he gave the mortgage to Stilson to which we have referred. We have expressly held in at least two cases that no presumption arises from the execution of a mortgage that the mortgagor owns the property therein described. *Everett v. Brown*, 64 Iowa, 420; *Warner v. Wilson*, 73 Iowa, 719. The writer would be disposed to doubt this rule were it an original proposition, but, having been twice announced, we are not disposed at this time to question it. See, also, *Andregg. v. Brunskill*, 87 Iowa, 351.

*2. STOCK OF goods: mortgage: presumption as to title.*

Perhaps the rule is correct where, as in this case, the controversy is between a mortgagee and a stranger, who is not bound, of course, by the terms of the written instrument to which he is not a party and with which he is not in privity. Certainly there are stronger grounds for saying in such a case that there is no such presumption than where a controversy arises as between the parties to an instrument. This is practically all there is to intervener's case. He did not produce Stilson as a witness, and evidently relied wholly upon a presumption arising from the possession of the mortgage. Were the controversy between plaintiff and intervener, doubtless the statement made in the mortgage regarding the ownership of the property would be conclusive on plaintiff, and estop him from denying it. But that is not the case. The main issue here is between intervener, a mortgagee, and defendant, who is an entire stranger to that document. The statement made in the mortgage could doubtless be used for impeaching C. M. Syck as a witness, but it should not be treated as substantive proof against the defendant.

This is sufficient to dispose of the case. But, aside from this, intervener did not sufficiently identify the property which he claims was covered by his mortgage. The stock at Hobart was not in its entirety covered by that instrument. A large addition of another stock was made thereto; but, as we understand the record, this was kept separate from the Belmond stock. A witness was offered to identify the goods, but he did not do so with any degree of clearness. Had the case gone to a jury, it could not, on the evidence before us, have returned a verdict identifying the goods covered by intervener's mortgage. It is not a case of confusion of goods where the mortgagee may be permitted to take the entire mass. It is said in argument that T. B. Syck was in possession of the goods as agent for C. M.; but there is no evidence, aside from that to which we have referred, to substantiate this claim. It

may be that this whole transaction between C. M. and T. B. Syck was a fraud; but there is nothing but mere surmise to justify this inference.   However this may be, there is no evidence that defendant, who sold the Hobart stock to T. B. Syck or to his wife, had any knowledge of this fraud.   He was not bound to examine the record for mortgages made by C. M. Syck, for he (Syck) was a resident of the state of Minnesota, and the goods were at all times in the possession of T. B. Syck.

The motion to direct a verdict was properly sustained —AFFIRMED.