BENSEN & MARXER, Incorporated, Appellee, v. J. M. REGER,
   et al., Appellees; TROY LAUNDRY MACHINERY
   COMPANY, Limited, Intervener, Appellant.

**CHATTEL MORTGAGES:** Cancellation of Lien. A mortgage lien is
1  not lost by the *unexecuted* acceptance by the mortgagee of an
   offer by one of several joint mortgagors to surrender the mort-
   gaged property, followed by the turning over of the said prop-
   erty by the mortgagors, with the consent of the mortgagee, to
   a third party, who agreed to pay to mortgagee the unsurren-
   dered mortgage notes.

**CHATTEL MORTGAGES:** Burden to Establish Cancellation. He
2  who asserts that a mortgagee has so conducted himself as to
   work a cancellation of the mortgage lien must so show by a
   preponderance of the testimony.

*Appeal from Polk District Court.*—HUBERT UTTERBACK,
                        Judge.

SEPTEMBER 30, 1918.

SUPPLEMENTAL OPINION ON REHEARING MAY 14, 1919.

THE appellant complains that a chattel mortgage given
to it was held to be noneffective, as against the claims of
the other parties to the litigation.—*Reversed and remanded.*

*Casper Schenk,* for appellant.

*T. L. Sellers* and *H. L. Bump,* for appellees.

SALINGER, J.—I.   Frank Tillotson, B. M. Tillotson, and
Emma Tillotson made a chattel mortgage to appellant
upon a certain piece of laundry machinery bought of ap-
pellant.   The mortgage secured ten prom-

1. CHATTEL
   MORTGAGES:
   cancellation
   of lien.

issory notes, given by these parties at the
same time.   This chattel mortgage is prior,
in point of time, to any claim which the
other parties to the suit have.   But they claim the mort-
gage is no longer effective, and should be canceled; and the
trial court canceled it.   The machinery has been sold, and

the appellant now makes claim upon the proceeds. If these notes are still enforcible, and this mortgage effective, appellant is entitled to recover the sum claimed by it. Among other things, the appellees argue that the mortgage was not so recorded as to impart notice. But neither this point nor some others argued are in the case.

II. The only defense pleaded is:

"That the said contract of purchase, notes and mortgage has been canceled, and the property secured thereby returned to appellant, on or about January 1, 1914, and it accepted said machinery and sold the same to the defendant J. M. Reger; and that said note and mortgage are of no force and effect, and the lien on the said personal property has been canceled, and is now void and of no effect."

We construe this pleading to defend with the claim that the mortgage indebtedness should be canceled, and the mortgage is no longer effective as a lien. While it is said this is so because appellant accepted the machinery and sold the same to Reger, we think this is no more than a fact argument why cancellation is due, and that it does not enlarge the defense beyond claiming that cancellation is due. The appellees confess that, if certain specified transactions "did not amount to a merger or cancellation" of the mortgage, then the decree cannot be sustained. We agree with appellant that the sole question is whether these transactions sustain a cancellation of the mortgage and mortgage debt. The decree holds appellant canceled its debt because of a request by Frank Tillotson, and because, subsequent to or in connection with this cancellation, it sold the machinery to defendant Reger. The question is whether whatsoever was done in the premises sustains the conclusion of the trial judge that its effect was to extinguish the lien of the mortgage and the mortgage debt.

The witness Frank Tillotson says he purchased the machinery originally, and later wrote the machinery company that he could not pay the note, and it would have to take the property. The appellant acknowledged the receipt of this communication, and added:

"You will therefore please have the mangle crated and shipped back to us at Chicago, having the freight receipt read 'Returned for repairs.' Please have this done at once."

Though Frank Tillotson purchased the machinery, that does not establish that he was or remained its sole owner, and that he alone was or remained indebted for the purchase price. On the contrary, the mortgage given for the purchase price was signed by himself and the other two Tillotsons. Now, the mere giving of the mortgage does not prove that the property mortgaged belongs to the mortgagor. *Lee County Sav. Bank v. Snodgrass Bros.*, 182 Iowa 1387. On the other hand, the fact that Frank Tillotson did the purchasing does not prove he was the sole owner of the property to secure and evidence the purchase price of which he and two others gave this mortgage and these notes. It is, however, proved that the mortgage debt was owed by all three, and nothing is left open except whether Frank Tillotson alone owned the mortgaged machinery. That there is failure to prove that Frank Tillotson was sole owner does appellant no harm. For the burden of proving every element to establish cancellation is on appellee. Code Section 3622, 3629; 6 Cyc. 281; 34 Cyc. 1094; 16 Cyc. 926; 27 Cyc. 1397. It is elementary, then, that a request by Frank Tillotson alone that the mortgaged property be taken back and the mortgage debt canceled, effects nothing, even though the mortgagee agreed to the proposal. At most, all that was accepted was the offer of one mortgage debtor to cancel the mortgage debt owed by three. Moreover, the offer and acceptance on pa-

per were not completed by delivery to the mortgagee, in accordance with the terms of its acceptance. In *Frentress v. Markle*, 2 G. Greene 553, two executed a partnership note. Before the note became due, they dissolved, and it was agreed that one partner should take the property and pay the debts of the firm. The holder of the note approved the arrangement, and promised to return the note, and take in satisfaction the individual notes of the one partner, and give the other a receipt. But the old note was not given up, nor was a new note or receipt given, and it was held the agreement did not show a release of the one partner, nor an accord and satisfaction, and was not more than an executory agreement. At this point, consideration is lacking. A release must be supported by a sufficient consideration. 34 Cyc. 1048. That may be some disadvantage to the creditor—the altering of his condition for the worse, which may, among other things, arise because of some release of the principal, or the surrender of some security or right. 32 Cyc. 54. It may be a detriment to the debtor. 9 Cyc. 308. A promise by a creditor of a firm to release one partner and hold the others is not supported by a consideration, when the partner claiming the discharge parted with no security, and did not act upon the promise to release. *Fagg v. Hambel*, 21 Iowa 140. And mere voluntary declarations made by a creditor that a debtor is discharged or released do not bind him. 34 Cyc. 1048.

III. We therefore hold that, to this point, nothing occurred which canceled the mortgage or justified the court in canceling it.

But this was not all that was done. After the said acceptance by the appellant, Frank Tillotson exercised whatever authority he had in the premises in another direction. He advised the appellant that Reger "will take up the unpaid notes on mangle." Upon this, the appellant responded that, as soon as it received a draft for $30.60,

it would immediately cancel "the three notes which fell due October, November and December 20th." This worked an abandonment of the acceptance of the offer to surrender the machinery to appellant in return for a cancellation of the mortgage debt. If the trial court was justified in canceling this debt, it must be because of the consent by appellant that the property might be turned over to Reger, upon compliance by Reger with conditions stated in this last acceptance. Now, surely, where the holder of a mortgage consents to a sale of the mortgaged property upon condition that the new owner shall pay the mortgage debt, this, of itself, is neither a merger nor a cancellation of the mortgage debt, and of itself justifies no cancellation of such debt by the court. It is the position of appellee that the effect of this was to both cancel the mortgage and extinguish the mortgage debt. It may be said, in passing, that, if it be assumed it was intended by this to release the mortgagors from personal liability, it does not follow that the mortgage itself was discharged. 27 Cyc. 1404. But passing that, it is our opinion that the letter from appellant is, first, a permission to sell, which would avoid prosecution for selling, and, next, an acceptance of an offer of additional security. Our reasons for this view are the following:

(a) The witness Tillotson says he did not agree to give up his claims to the property, because (in effect) he would not do so since the notes and mortgage were standing against him.

(b) This witness seems to have made no denial or disclaimer when the attorney of appellant told him that, if the claim was not made out of the machinery, it would still have to be got out of him.

(c) It is contrary to common knowledge of what constitutes ordinary business prudence that one who had a mortgage for all the purchase price remaining unpaid

should take the notes of an unknown man for part of that sum in place of that mortgage, demand no new mortgage, and yet intend to cancel the one it had.

(d) The letter states that, if draft was sent, the sale to Reger was approved; and that, in event of said remittance, three specified notes would be canceled. *Designatio unius est exclusio alterius* thus negatives any intention to cancel the whole mortgage debt.

(e) Appellant retains the instrument, uncanceled and undefaced. See *Corbin v. McAllister*, 144 Iowa 71, 78; Jones *v. Fennmore*, 1 G. Greene 134, at 147; 27 Cyc. 1399, Note 77.

(f) There was no instrument of release, nor release of record.

(g) It is stipulated the notes and mortgage have never been paid; that they were due the appellant, and were still its property at the time of the trial.

### 3-b

At the outset, appellees were met by the presumption of continuity. There having been a debt, it is presumed that it still exists, until it be satisfactorily proved by the challenger that it had been extinguished.

2. CHATTEL MORTGAGES: burden to establish cancellation. The utmost that might be claimed for the appellees is that the testimony is in equipoise; that its theory of cancellation or merger is as tenable as the theory that there was no release, cancellation, or merger, but merely the taking on of additional security. The proof certainly does not preponderate in favor of the theory of the appellee. This is so if the claim were established that appellant had made no demands, either for the machine or for payment. The fact is, there were no demands made of Frank Tillotson for the possession of the machine, nor payment. That, however, is not unnatural, since appellant knew the machinery was in the possession of Reger, and had virtually

agreed to look to Reger as the primary debtor, as between himself and the Tillotsons. But as to Reger, a demand was made for payment of three of the notes, with the statement that they were past due. Appellee seeks to avoid this by the argument that the form of the demand spoke of the notes as "your" note, and that "your," being singular, had reference to Reger alone, and was, in effect, a concession that he alone was indebted. But "your" is a plural, as well as a singular, possessive pronoun, and the salutation in the letter was the plural, "Gentlemen."

IV.   In view of the result here, we have no occasion to consider the claim that the sale to Reger was within the statute of frauds, nor the complaint that the appellant was not permitted* to reopen the case after the same had been submitted.

The decree is reversed. The cause is remanded for decree establishing the claim made by appellant, and giving it priority over the claims of all other parties to the suit. Or, at its election, appellant may take decree in this court, in rule manner and time.—*Reversed and remanded.*

PRESTON, C. J., LADD and EVANS, JJ., concur.

### SUPPLEMENTAL OPINION ON REHEARING.

SALINGER, J.   Appellees earnestly insist now that the record justified no action on part of this court concerning the cancellation of the mortgage. It is said:

"The argument of cancellation of the mortgage was never mentioned nor heard of nor presented to any court, until the appellant, in his reply argument, misstated the issues."

We find that, in a petition of intervention filed, there was an express allegation "that the said contract of purchase, notes and mortgages  *  *  *  have been canceled *  *  *  and that the said notes and mortgage are of no

force and effect and the lien on the said personal property has been canceled and is now void and of no effect." On the trial, the witness Frank Tillotson was asked whether the mortgage had been canceled. The decree below recites that the Troy Machinery Company, at the request of Tillotson, "canceled its contract with the said Tillotson for the purchase of said mangle, and thereby canceled its mortgage and the lien thereof, and that, subsequent to the canceling the debt and lien, it sold" the property. The point was not first made in the reply argument for the appellant, but in its opening argument. There, it was stated that "the sole ultimate issue in controversy is whether or not appellant's mortgage had been canceled or released, prior to the action." In another part of its argument, appellant stated that "the court held that appellant's mortgage had been canceled, and dismissed the petition of intervention." In its statement of errors relied upon, appellant urged there was error in holding "that the Troy Laundry Machinery Company had canceled its mortgage and the lien thereof."

We have no wish to chide counsel for being zealous, but when such a zeal is expended on "ear kissing" argument, based on a mistaken view of the record, we must, of course, be controlled by the record.

II. We have been led into error in giving the appellant preference over the appellee Alfred Tonks. This is due to our having overlooked a concession made in the argument of the appellant. That concession is as follows:

"It is conceded that Mr. Alfred Tonks is entitled to a preference in the sum of $100 against this fund for labor performed within 90 days, under Section 4019 of the Code of Iowa."

The avoidance of the appellant is that we should not have accepted its said concession without noting that appended thereto was a reference to certain lines on certain pages of the abstract; that, had we examined the pages re-

ferred to, we should have found that the facts did not warrant the concession; and that neither said statute nor any other law gives the conceded preference upon the facts we would have found, had we followed the references to the abstract. It seems to us we have no such burden. We know of no theory upon which it is made our duty to see to it that waivers in open court are not improvidently made. We are of opinion that it is our right to accept such a concession as appellant made in this case at its face. We do so. It follows that the opinion to which this is a supplement must be modified to the extent of decreeing that the intervener Alfred Tonks shall have a preference in the sum of $100 against the fund involved in this suit. It is, accordingly, so ordered. In all other respects, the opinion will be adhered to.

Petition overruled, with modification.

PRESTON, C. J., LADD and EVANS, JJ., concur.