UNION BANK & TRUST COMPANY OF STANWOOD, Appellee, v. C. R. WILLEY, Sheriff, Appellant; MURPHY TRANSPORTATION COMPANY, Intervener, Appellant.

No. 46928.

November 12, 1946.

Leming & Hobson, of Hampton, for appellants.

France & France, of Tipton, for appellee.

Bliss, J.—In its petition plaintiff prayed judgment for the possession of a Ford truck, and as grounds therefor alleged that: It was a banking corporation at Stanwood, Iowa, and the owner of a chattel note and mortgage executed May 7, 1945, by Mary and Charles Starkey for $500 covering said truck and specifically describing it, which mortgage was recorded in the office of the county recorder of Cedar County, Iowa, on May 9, 1945; default had been made in the payment of installments on said note and by its terms the whole amount thereof was due and plaintiff was entitled to the immediate possession of the truck; demand for its possession had been refused by the defendant, sheriff of Cedar county, who had levied upon and held said truck by virtue of a conditional-sales contract owned by the Murphy Transportation Company.

The defendant filed answer alleging that he had no interest in the truck or the controversy other than, as sheriff, at the

request of the Murphy Transportation Company, intervener, he had taken possession of the truck by and under the conditional-sales contract but had immediately released the truck to the plaintiff upon the service of the original notice on him.

The intervener, in its petition of intervention, alleged that: It was a corporation with its principal place of business at Hampton, Iowa; on September 16, 1944, B. C. Young, then a resident of Hampton, in Franklin county, as purchaser or vendee executed a conditional-sales contract covering the used truck involved herein, and other trucks, and delivered said contract to D. D. Alderdyce of Hampton; the contract was filed in the office of the recorder of Franklin county, on September 20, 1944; Young also executed a promissory note to Alderdyce, who sold the note and the contract to the Central National Bank and Trust Company of Des Moines; later Alderdyce was required to take up the paper and thereafter sold it to the intervener, under whose direction the defendant sheriff took possession of the truck on August 20, 1945. Intervener also alleged that it had no knowledge of plaintiff's mortgage and therefore denied the allegations respecting it and alleged prior and superior right to the truck under its contract.

In answer to the petition of intervention plaintiff denied that Young was a resident of Franklin county on September 16, 1944, and denied that the conditional-sales contract was executed or filed or entitled to be filed or that Alderdyce was the owner or holder of a valid conditional-sales contract, and denied that the defendant or the intervener was entitled to the possession of the truck. For further answer to the petition of intervention the plaintiff alleged that Alderdyce never owned or possessed the truck but Young was the owner and operated it out of the town of Bennet in Cedar county and sold it to Mary and Charles Starkey, who mortgaged it to plaintiff, as alleged in its petition, and that such interest as the intervener claimed was junior and inferior to plaintiff's right under the mortgage.

Trial was begun on October 29, 1945. Haesemeyer, the president of plaintiff, identified its chattel mortgage and testified that: He handled the mortgage transaction for it; he was acquainted with the Starkeys; B. C. Young was living at Tipton, in Cedar county at the time, although he had never met him

before; Young, who was selling the truck to the Starkeys, told him it was clear. He also testified to the execution of the chattel note and mortgage as alleged in the petition and that it was wholly unpaid and that at no time prior to the execution of the note and mortgage was it ever called to his attention that there was any encumbrance or claim against the truck until the sheriff took possession of it under the contract of the Murphy Transportation Company. On cross-examination he testified that he had checked the records of Cedar county only. The page of the chattel-mortgage index book No. 17 of Cedar county, together with the chattel note and mortgage, was introduced in evidence without objection. Without offering any other evidence the plaintiff rested.

Defendant and intervener offered the testimony of Alderdyce. He testified that: He lived in Hampton on September 16, 1944, at which place also lived B. C. Young, who had been in his employ for two years; on the date stated above he sold Young the truck in question, with five other trucks, for a consideration of $3,508.50, and Young executed and acknowledged a conditional-sales contract on said date, in his presence in the First National Bank of Hampton, which contract the witness filed in the Franklin county recorder's office on September 20, 1944, and received the recorder's receipt of said filing. This receipt was received in evidence. He also testified that the amount owing on the truck was about $622; that he did not own the note, as he had sold it and the contract and equipment to the Murphy Transportation Company on January 1, 1945, and that, so far as he knew, this company was the owner of the unpaid balance; that he had purchased the truck from Walter Popp between September 10 and September 15, 1944, and transferred it to B. C. Young in Cedar county. He identified Exhibit A as a duplicate carbon copy of the original conditional-sales contract between him and Young, marked duplicate for filing, and testified that he retained title to the truck as provided in the contract. Plaintiff objected to the offer in evidence of Exhibit A ''because it was not executed or signed by the vendor or seller Alderdyce; that it did not comply with Section 10016 of the Code; that it was invalid and immaterial for any purpose; that it was not notice

to a subsequent purchaser; that there was no proper showing that B. C. Young was a resident of Franklin County, Iowa on the date of the filing of the instrument; that the same was not subject to filing and did not constitute notice either actual or constructive of any claim or lien against the truck in question.''

Exhibit C was then identified by the witness Alderdyce. Exhibit A is not set out in the printed record. The following appears in the printed record:

''It was stated by counsel at that time [the time of its offer] that Exhibit C was the duplicate original of the copy which was filed in the office of the Recorder of Deeds of Franklin County; that it was signed by both parties while the one that was recorded was signed by the purchaser only.''

A photostatic copy of Exhibit C appears as page 19 of the printed ''Record.'' It is a printed form. In the printed body it is expressly stated that the instrument will be assigned to the Central National Bank and Trust Company of Des Moines, and further stated that the purchaser acknowledges notice of this intended sale to the Des Moines bank and will thereafter deal directly with it. Immediately following these printed paragraphs is the blank line for the signature of the purchaser. The signature of B. C. Young appears there on this Exhibit. Immediately below is a printed sale, assignment, etc., of the contract to the said Des Moines bank. Then follows a blank line, designated ''Signature of Dealer,'' on which is the name ''D. D. Alderdyce.'' But this paragraph above the signature of Alderdyce is something more than an assignment. It is also an acceptance of the contract or offer of Young, for the first line thereof is as follows:

''The within contract is hereby accepted and for valuable consideration, the receipt whereof is hereby acknowledged, the undersigned hereby sells, assigns, transfers, and sets over to'' said bank ''the within contract * * *.'' (Italics ours.)

It was the expressed thought of the trial court that Alderdyce had not executed this copy, Exhibit C, as vendor, as required by section 10016, Code, 1939, but only as assignor. We do not pass upon this conclusion of the court because it is not

necessary to the determination of this appeal. Exhibit A, it appears from the record, was the copy of the conditional-sales contract which was filed in Franklin county. It was executed and acknowledged by B. C. Young, the vendee or purchaser, but was not executed by Alderdyce. Not being executed by him it could not, and did not, bear his acknowledgment.

Section 10016, Code, 1939 (section 556.4, Code, 1946) provides:

"Conditional sales. No sale, contract, or lease, wherein the transfer of title or ownership of personal property is made to depend upon any condition, shall be valid against any creditor or purchaser of the vendee or lessee in actual possession obtained in pursuance thereof, without notice, unless "the same be in writing, executed by the vendor *and* vendee * * * acknowledged by the vendor *or* vendee * * * and such instrument or a true copy thereof is duly recorded by, or filed a'nd deposited with, the recorder of deeds of the county where the vendee or lessee resides if he be a resident of this state at the time of the execution of the instrument * * *." (Italics ours.)

Exhibit C bore the signatures of both Alderdyce, the vendor, and of Young, the vendee, but neither one acknowledged the execution of the instrument. It was neither filed nor recorded. Although Alderdyce testified that he sold Exhibit C to the intervener, the record discloses no assignment thereof to it, either on the contract or detached from it. Neither is there anything in the record showing that any such assignment was ever recorded in Franklin county, or elsewhere. The record on the offer of Exhibit C is as follows:

"Defendant offers in evidence Ex. C which is the conditional sales contract signed by both the seller and the purchaser.

"Objected to by plaintiff as incompetent, irrelevant and immaterial; that the Exhibit C is not acknowledged by the vendor or vendee, does not comply with Section 10016 of the Code, invalid for any purpose.

"Mr. Leming. Exhibit C is the duplicate of the blue copy [Exhibit A] that you have in your hand. It was signed by both

parties; the one that was recorded is signed by the purchaser only.''

After some colloquy with counsel, the court said:

''Mr. France, I am admitting these [Exhibits A and C] for the purpose of showing an indebtedness. As to whether or not they give constructive notice I am not going to say at this time. I am in doubt about that. Of course if you read the statute literally they don't. Sometimes they mean something. They are admitted for the purpose of showing the transaction between B. C. Young and D. D. Alderdyce, in connection with whatever weight they have to show there is something owing from Mr. Young to Mr. Alderdyce; but at this time not for the purpose of showing any constructive notice to the plaintiff.''

Exhibit C, the unacknowledged copy, which was not recorded, could not, of course, give constructive notice to anyone. The intervener assigned no error based upon any theory that the plaintiff had constructive notice of the conditional-sales contract. It made no such contention in its printed argument, and in reply to a question of the court during oral submission its counsel directly answered that it made no claim of that kind.

After the admission of these exhibits, the printed record states:

''It was stipulated that the blue paper (Ex. A) may be withdrawn and a copy substituted for the said original.

''The Court: The way I look at the matter I don't know whether it makes much difference. It seems to me there is just one point here that appears important to me anyhow, and that is the fact that the original is not signed by both the vendor and vendee, as the statute seems to require. I don't think that this signature * * * on this assignment on this copy [Exhibit C] helps the matter at all. * * *

''Mr. Leming: Let's put it this way: that the original Exhibit A may be withdrawn, and that in the consideration of this case the court shall use Exhibit C which is identical with Exhibit A down to the signature 'B. C. Young', that none of the part of Exhibit C is on Exhibit A on the first sheet of Exhibit C. Exhibit C does not have the acknowledgment as on

Exhibit A certifying to the signature of B. C. Young on the 16th day of September 1944. The original * * * Exhibit A shows the filing with the recorder on Sept. 20th, 1944 at 8:00 o'clock A. M. and is given No. 2263.''

After the filing of the printed arguments of appellant and appellee in this court, on the motion of appellee, under Rule 341 of the Rules of Civil Procedure, the trial court, after notice to appellants, at a hearing on September 13, 1946, made an order correcting the record by striking out certain misstatements therein, making corrections and substitutions, and striking all of page 19 of the printed record (photostatic copy of Exhibit C) after the signature ''B. C. Young.'' Appellants make no complaint of this proceeding or of the court's order.

At the conclusion of Alderdyce's testimony, with the exception of two witnesses whose testimony is not material on this appeal, ''the hearing was marked closed on October 29, 1945 at 3:30 o'clock P. M.'' On November 2, 1945, plaintiff amended its answer to the petition of intervention to conform to proof, by the addition of two allegations, one of which was that it ''loaned the said sum of $500 on said truck on May 7th, 1945, and took said mortgage without notice of the claim of the said intervenor or his grantors or assignors.'' On November 14, 1945, the intervener filed a motion stating that ''after the close of the evidence and before final submission of this cause to the court on trial without a jury, [it] moves * * * to dismiss plaintiff's petition'' upon ten specified grounds. On December 8, 1945, plaintiff filed a motion to set aside the submission, the motion, in full, being that ''the plaintiff moves the court to set aside the submission of this cause and to grant leave to the plaintiff to amend its petition and also to amend its reply to the petition of intervention.'' With the motion a copy of its proposed amendment was submitted. On December 22, 1945, plaintiff filed these amendments to its petition, and to its answer, stating that, leave of court first being had, it amended each pleading by adding to each the following:

''That the said Mary Starkey and Charles E. Starkey purchased the said truck on May 7th, 1945 and that the said B. C.

Young then guaranteed that the said truck was clear of encumbrance and that plaintiff then paid over to the said B. C. Young for the said Starkeys the sum of $500 secured by the said chattel mortgage on account of the purchase price thereof.''

On December 28, 1945, the intervener filed a resistance to the motion to set aside the submission, alleging in substance that plaintiff had alleged no showing that through casualty or inadvertence it had overlooked material evidence; that the case had been fully submitted to the court on written briefs and arguments; that it permitted plaintiff to try its case piecemeal; and that all of plaintiff's witnesses had at all times been available.

On January 7, 1946, the court sustained plaintiff's motion, permitted the filing of said amendments, and assigned the cause for further hearing on January 18, 1946. On January 17, 1946, defendant and the intervener amended the petition of intervention and its rejoinder to plaintiff's reply by alleging in substance that plaintiff and the Starkeys had not complied with section 5005.01, Code, 1939 (section 321.67, Code, 1946), and plaintiff was negligent in not examining the registry of the truck in the office of the Cedar county treasurer.

On February 21, 1946, the cause came on for further hearing. At this time the president of the plaintiff bank again was a witness and testified in substance that in the forenoon of May 7, 1945, Young, Starkey, and Mr. Rife, who was Starkey's father-in-law, came to the bank in the truck, and discussed the purchase of the truck by Starkey from Young, and asked the witness whether the bank would loan Starkey money on the truck and he told them it would; that Young stated the truck was absolutely clear; that he knew Starkey, who was a customer of the bank and had borrowed money from it before; that he knew the truck had been used and that it was necessary that a transfer of registration from Young to Starkey should be procured from the county treasurer, and they promised to go to Tipton and get the transfer, and all of them left in the truck; that he then drove to Tipton and checked the records in the recorder's office and found nothing against the truck; that he did not go into the treasurer's office to check the registration; that in the afternoon Starkey and wife and Rife drove back to the bank at

Stanwood in the truck and executed the note and mortgage for $500, and he then gave Starkey a certificate of deposit for $500 payable to Young on demand (Exhibit 7); that he saw Young a few days later and he told the witness that Starkey was operating the truck.

Starkey and Rife as witnesses corroborated the testimony of the plaintiff's president. Starkey testified that the truck was sold and delivered to him by Young and he gave him the $500 certificate on May 7, 1945, and that Young said he would attend to the transfer in the treasurer's office, but he had to leave for Chicago at once, and he borrowed Starkey's automobile to make the trip; that he returned in a few days and then left Tipton and he never saw him afterward. The deputy county treasurer testified that the truck had been licensed in that office in 1944 and for the first half of 1945 in the name of B. C. Young and that there had been no transfer of that license and it still stood in his name.

At the close of the testimony Mr. Leming, for the defendant and intervener, stated to the court that as he viewed the record the case should not have been reopened and that he thought the costs thereof should be taxed to the plaintiff. The court agreed with him.

The court made and filed written findings of fact, conclusions of law, opinion, and judgment. These were all favorable to the plaintiff and adverse to the defendant and the intervener, except as to the contention of the plaintiff that Young, on September 16, 1944, when he executed the contract, was a resident of Cedar county and that the contract should have been placed on record there. On this issue the court found the weight of the evidence was to the contrary and that Young was then a resident of Franklin county.

In addition to the above conclusion that Franklin county was the proper place for the filing of the conditional-sales contract, the trial court reached the following conclusions of law:

1. Plaintiff had the burden of showing that its mortgagors were the owners of the truck, so that they could validly execute the mortgage of May 7, 1945.

2. It had the burden of proving it was an innocent purchaser of the truck under section 10016, Code, 1939.

3. If it could be said that plaintiff was negligent in not examining the record in the office of the county treasurer of Cedar county such failure was immaterial, since the examination would merely have disclosed that the truck was licensed in Young's name and would not have put it upon inquiry which would have led to notice of the intervener's contract.

4. Failure of Young and Starkey to comply with section 5005.01, Code, 1939 (section 321.67, Code, 1946), did not invalidate the sale of the truck by Young to Starkey and thereby invalidate plaintiff's mortgage.

5. Since plaintiff was a mortgagee-purchaser without notice, the contract, having been executed only by the vendee, was invalid under said section 10016, as against the plaintiff.

Finding that the plaintiff had met the burdens stated above, and bottoming its determination of the case thereon and upon the propositions of law there stated, the court rendered judgment for the plaintiff.

The intervener, as appellant, relies for reversal upon the following errors of the trial court:

1. In holding that a valid transfer of the used truck could be made between buyer and seller without compliance with said Code section 5005.01.

2. In disregarding the fact that the contract, Exhibit C, was valid and the sheriff took possession of the truck thereunder.

3. In holding plaintiff free from negligence in not following up notice of circumstances sufficient to put it upon inquiry which would have led to actual notice of intervener's contract.

4. In giving judgment for plaintiff which actively participated in arranging and carrying out an unlawful transaction.

5. In giving judgment to plaintiff.

6. In permitting the case to be reopened on the showing made.

I. Assigned errors 1 and 4 may be passed upon together. They are based upon section 5005.01, Code, 1939, which provides, in substance, that it is unlawful for a person to buy any secondhand or used motor vehicle without requiring and receiving from the vendor a certificate of registration and transfer from the officer whose duty it is to register motor vehicles, showing the factory number, registration number, description,

and ownership of said vehicle. The section also provides that it is unlawful for one to sell such vehicle without furnishing to the vendee such certificate.

It is the contention of appellant that the failure to comply with this section invalidates the sale and prevents the transfer of title to, and ownership of, the used motor vehicle. Appellant's counsel states that he has found no decision of this court construing this section. We have found none. But the court has construed other statutory provisions relating to the licensing and regulation of motor vehicles which point the way to the proper construction of said section 5005.01 as it bears upon the contention of appellant.

In Davenport v. Pierce, 194 Iowa 1152, 1154, 1155, 190 N. W. 942, plaintiff had sold to Beeson a truck, registered in plaintiff's name as required by section 5, chapter 275, Acts of the Thirty-eighth General Assembly (section 3048, Comp. Code, 1919). The sale was evidenced by a conditional-sales contract which was not acknowledged or recorded. Beeson, after defaulting in his payments, sold the truck to Pierce, who purchased without any notice or knowledge of plaintiff's rights. As in the appeal before us, there was no transfer of the certificate of registration from the vendor to the vendee—from Beeson to Pierce. The truck was a secondhand one. The provisions of section 5005.01, Code of 1939, were then in force as section 3063, Comp. Code, 1919 (section 20, chapter 275, Acts of the Thirty-eighth General Assembly). Plaintiff brought an action to recover possession of the truck against Pierce and a repairman who was holding it under a mechanic's lien. The plaintiff claimed nothing under the used-car section (section 3063) but contended that, since the truck was still registered in his name in the county treasurer's office, under section 3048, Comp. Code, 1919, this operated as constructive notice to both defendants of plaintiff's right to reclaim possession. In affirming the judgment against the plaintiff, Justice Weaver said:

"This conclusion is manifestly correct, unless we are to hold that the provisions of the statute regulating and governing the ownership, registration, and transfer of. motor vehicles operate as constructive notice to the world of all the defects (if

any) which may exist in the title or interest of any and all of the prior owners of such vehicle; and this we think cannot be. Constructive notice of conditional sales and reservations of title is the creature of statute (Code Section 2905) [section 10016, Code, 1939], and it must be imparted by written instrument, duly acknowledged, admissible to record, and actually recorded. The contract in this case, under which the plaintiff claims, was never recorded, was not acknowledged, nor eligible to record, and it is conceded that defendants had no actual notice of its existence. The statutes of the state prescribing regulations for the licensing, registering, and regulating, and the buying, selling, registration, and operation of motor vehicles have no direct relation to the rights and equities which may exist as between successive owners or purchasers of such property. Their primary purpose is dual: to promote the safe and convenient use of the public highway by this class of vehicles, and as well, to insure regular and prompt payment of license fees and taxes imposed thereon. One who is about to purchase an item of personal property, and who desires to be sure that there are no outstanding equities in third persons which may cloud the title he is taking, naturally and properly has resort to the office of the county recorder. That is where the statute points him, and upon its disclosures he may safely rely.''

See, also, Beintema v. Van Zante, 197 Iowa 117–119, 196 N. W. 941.

In Cerex Co. v. Peterson, 203 Iowa 355, 357, 358, 212 N. W. 890, 891, the court construed section 4964, Code, 1924. Sections 4961 and 4962 of that Code provided that upon the transfer of ownership of any registered motor vehicle the seller and the purchaser should immediately give notice thereof to the county treasurer and the purchaser should make application for the transfer of the motor vehicle and for a new certificate of registration. Section 4964, provided:

''Until said transferee has received said certificate of registration and has written his name upon the face thereof for the purpose of this chapter, delivery and title to said motor vehicle shall be deemed not to have been made and passed.''

In the cited case the plaintiff had attached an automobile

as the property of Peterson, who, prior to the levy, had given a bill of sale to the intervener, which had been recorded before the levy. Plaintiff made no claim to being a bona fide purchaser but contended that since there had been no compliance with section 4961 et seq. the automobile remained the property of Peterson and subject to attachment. In affirming a judgment for the intervener, the court, by Justice Morling, said:

"It is only for the purpose of Chapter 251 of the Code of 1924, regulating motor vehicles and prescribing the law of the road, that delivery and title are declared not to pass until the registration provisions are complied with. This is apparent from other provisions of the chapter. This chapter fixes the license fee to be paid in lieu of all taxes, general or local, on motor vehicles. Section 4927. The tax is made a lien on the motor vehicle. Section 4928. Motor vehicles are easily and quickly removed to distant places. A vehicle registered and taxed in one county may be sold to a buyer in a remote county. The registering and taxing authorities of the county where it was first registered might, in the absence of such provisions as are contained in Section 4961 et seq., lose all trace of the vehicle, and the authorities of the buyer's county would have no notice of its being subject to registration and license there. Peculiar provisions were, therefore, necessary, to enable the officials to perform their duty and the state to collect the tax and to prevent fraud, not on the seller or his creditors, but on the state. * * * As has been noted, the rights of the parties as between themselves were left to be determined by the Uniform Sales Act and the law generally governing sales and liens. The Motor Vehicles Act does not purport to deny to the seller and purchaser, as between themselves, the full rights under the contract which they would have had in the absence of that act."

The decision in Cerex Co. v. Peterson, supra, was referred to with approval in Shepard v. Findley, 204 Iowa 107, 110, 111, 214 N. W. 676; Tigue Sales Co. v. Reliance Motor Co., 207 Iowa 567, 572, 573, 221 N. W. 514; Abraham v. Hartford Ins. Co., 215 Iowa 1, 3, 4, 244 N. W. 675; Craddock v. Bickelhaupt, 227 Iowa 202, 206-210, 288 N. W. 109, 135 A. L. R. 474; and in Garuba v. Yorkshire Ins. Co., 233 Iowa 579-581, 9 N. W. 2d

1264

817. These decisions, though not construing statutes precisely like the one involved herein, aid very materially in reaching a correct solution. The reasons given in support of the conclusions reached therein are just as applicable to said section 5005.01 in its bearing on the question before us. That section and those sections construed in our earlier decisions are all a part of chapter 251.1, Code, 1939 (chapter 321, Code, 1946) entitled "Motor Vehicles And Law Of Road." They are to be construed in the light of and in accord with the purposes and objects of its provisions. It is our conclusion that neither the sale of the truck by Young to the Starkeys nor the mortgaging of the truck by the Starkeys to the appellee was rendered invalid by the failure of Young and the Starkeys to comply with said section 5005.01. Penalties for the doing of any act forbidden or the failure to perform any act required by the provisions of said chapter 251.1 are provided for in section 5036.01 thereof.

Nor can it be said that the appellee or its president so participated in the sale transaction between Young and the Starkeys as to have violated said section 5005.01. It is true that he knew of the requirements of the section. Mr. Starkey was a dealer in used cars and he also knew. So did Young. They told the president of the bank, who alone of its officers had anything to do with the transaction, that they were going to the county treasurer at Tipton to comply with the statute. It was required by law and to the interest of each to do so. He assumed that it was done and made no further inquiry about the matter. Young assured Starkey that he would attend to the matter but stated that he wished to leave for Chicago at once. He returned in a few days and then left and neither Starkey nor the president of appellee saw him thereafter. There is no merit to the fourth assigned error.

II. In assigned error 3 appellant complains that the court erred in holding that appellee was not so put upon inquiry by circumstances that if it had investigated them it would have had actual notice of intervener's contract. Appellant does not claim that appellee had any knowledge or notice, either actual or constructive, of intervener's contract or of its rights thereunder. Its only claim with respect to notice, of any kind,

is that circumstances attendant upon the sale to the Starkeys, and the mortgage transaction, on May 7, 1945, did or should have put the appellee on inquiry, which, if pursued, would have given it actual notice of intervener's contract. We find nothing in the situation which should have put appellee on inquiry or roused any suspicion. Young had lived in Cedar county over seven months. Starkey was a customer of the bank and dealt some in secondhand cars. He had an opportunity to buy the truck and wished to borrow $500 to do so. Starkey and Young, the seller, drove the truck to the bank. Young assured Haesemeyer, its president, that he owned the truck and it was clear. He saw the truck and told them he would make the loan. Starkey and Young then left to get Mrs. Starkey. While they were gone Haesemeyer drove to Tipton to examine the records in the office of the recorder of Cedar county with respect to Young and the truck and found no encumbrance. He was informed that the truck was registered in Young's name and Young and Starkey told him that the transfer of registration would be made. Appellant insists that Haesemeyer should have examined the registration in the treasurer's office. Such an examination would have disclosed only that Young was the registered owner and would have given no information as to the conditional-sales contract. Appellant further urges that Haesemeyer should have ascertained from Young or others where he had lived before coming to Cedar county, and then have had a search made in such county, and thus would have learned of the contract filed in Hampton. What facts are sufficient to put a party upon inquiry must depend upon the circumstances in each case. Here Haesemeyer did what the reasonably prudent man would have done. There were no suspicious circumstances. But as a careful banker he searched the records in the county where Young was living. We have recently reviewed the authorities on this question in State Sav. Bk. v. Universal Credit Corp., 233 Iowa 247, 255, 8 N. W. 2d 719, and it is our conclusion that the court's findings of fact and conclusions of law on this point are supported by the law and the evidence.

III. Another error assigned is that the court disregarded the fact that intervener's contract, Exhibit C, under which the sheriff took possession of the truck was a valid con-

tract. Whether the appellant bases his case or his defense upon Exhibit C, the copy of the contract which he possessed and delivered to the sheriff, or upon Exhibit A, the copy on file in the office of the Franklin county recorder at Hampton, is not very material. He is entitled to all the benefits that may accrue to him under either. Exhibit C was not acknowledged, filed, or recorded. The court rightly found that the appellee had no knowledge and no actual notice or constructive notice of it and no knowledge of circumstances sufficient to put it upon inquiry leading to actual notice. It was therefore not valid against the appellee, a purchaser for value. Appellee, though a mortgagee, was a purchaser within the contemplation of said section 10016 (section 556.4, Code, 1946). See Porter v. Green, 4 (Clarke) Iowa 571, 572–575; Manny & Co. v. Woods, 33 Iowa 265, 269; Barney v. McCarty, 15 Iowa 510, 514, 83 Am. Dec. 427; Raymond v. Whitehouse, 119 Iowa 132, 138, 93 N. W. 292; In re Estate of Gill, 79 Iowa 296, 299, 300, 44 N. W. 553, 9 L. R. A. 126; Bowling v. Cook, 39 Iowa 200, 202; Union Bk. v. Creamery Package Mfg. Co., 105 Iowa 136–139, 74 N. W. 921; State Sav. Bk.. v. Universal Credit Corp., supra, 233 Iowa 247, 250, 8 N. W. 2d 719; Slimmer & Thomas. v. Lawler, 205 Iowa 813, 818–820, 218 N. W. 516; Central Tr. Co. v. Stepanek, 138 Iowa 131–137, 115 N. W. 891, 15 L. R. A., N. S., 1025, 128 Am. St. Rep. 175; section 10005, Code, 1939 (section 554.77, Code, 1946); 47 Am. Jur., Sales, section 915.

With respect to the copy of the contract, Exhibit A, appellant concedes that appellee had no actual knowledge of it, no actual or constructive notice of it, and we sustain the court's finding against appellant's contention that appellee was negligent in not further pursuing the inquiry which the circumstances called to its attention.

Section 10016, Code, 1939, plainly states that no conditional-sales contract, as described therein, shall be valid against a purchaser of the vendee in actual possession under the contract—said purchaser being without notice of the contract—unless the contract be in writing executed by the vendor *and* vendee, and such contract or a true copy thereof is duly recorded by or filed and deposited with the county recorder.

This section appeared as section 2905, Code, 1897, and provided that no such contract should be valid against any creditor or purchaser of the "vendee or lessee * * * unless the same be in writing, executed by the vendor or lessor, acknowledged and recorded the same as chattel mortgages."

The Thirty-seventh General Assembly, by chapter 154 of its Acts, amended section 2905 of the 1897 Code to read as it now appears in said section 10016. This amendment indicated the definite intention of the legislature to make the execution of such a contract by both the vendor and vendee one of the essentials to its validity as against a creditor or purchaser without notice, within the purview and for the purposes of said section.

Prior to the enactment of section 1922, Code of 1873, the predecessor of section 10016, Code, 1939, and the first legislation in Iowa on the matter, it was the law of this state that an innocent purchaser for value of personal property from a vendee, who held it under such a conditional-sales contract, acquired no title to the property as against the vendor therein unless the original transaction was fraudulent. See Bailey v. Harris, 8 (Clarke) Iowa 331, 333, 74 Am. Dec. 312; Robinson v. Chapline, 9 Iowa 91, 95; Baker v. Hall, 15 Iowa 277, 279; Moseley & Bros. v. Shattuck, 43 Iowa 540, 541, 543, 544; National Cash Register Co. v. Maloney, 95 Iowa 573, 575, 576, 64 N. W. 618; National Cash Register Co. v. Zangs, 127 Iowa 710, 712, 713, 104 N. W. 360; Warner v. Johnson & Hakeman, 65 Iowa 126, 127–129, 21 N. W. 483. At common law, also, in almost all jurisdictions, such contracts are effective to reserve title in the vendor against the vendee, and all other persons, unless he has estopped himself. And this is true even though it is not recorded and is not in writing. Bailey v. Harris, supra: 47 Am. Jur., Sales, sections 848, 850, 851, 901, 913; 45 Am. Jur., Records and Recording Laws, section 81. Neither are such contracts repugnant to the Uniform Sales Act (sections 9930 [§1] (3), 9947 [§18], Code, 1939, sections 554.1 and 554.19, Code, 1946). The purpose of a conditional-sales contract is to permit the owner of personal property to sell, and the purchaser to buy, on credit, reserving title in the seller until the purchase price is paid. But at common law it afforded opportunities to defraud creditors of,

1268

and bona fide purchasers from, the purchaser in possession. Registry and recordation legislation was enacted to remedy these evils.

"The whole purpose of the recording acts is to prevent secret liens, to protect bona fide purchasers for value and subsequent creditors, who have relied on the apparent possession of the vendee, to purchase from him or to extend credit to him." Carroll v. Cash Mills, 125 S. C. 332, 341, 118 S. E. 290, 292.

See, also, Finance Corp. of America v. McGhee, 142 S. C. 380, 140 S. E. 691, 55 A. L. R. 1133, in 47 Am. Jur. 121 (footnote).

As said in Warner v. Johnson & Hakeman, supra, 65 Iowa 126, 127, 21 N. W. 483:

"It was doubtless to prevent the injustice that parties were sometimes enabled to practice under the rule established by these cases [Bailey v. Harris, supra] that the section [1922, Code, 1873] was enacted. * * * It is very clear that this statute in no manner changes, as between themselves, any of the rights of the immediate parties to a conditional transfer of property, which are created or reserved by their contract. But it is the rights and interests of the creditors of, or purchasers from, the vendee which were intended to be protected by it."

The same thought is expressed in International Harvester Co. v. Poduska, 211 Iowa 892, 896, 898, 899, 232 N. W. 67, 71 A. L. R. 973, and in Gluck Co. v. Therme, 154 Iowa 201, 205, 134 N. W. 438. Like all legislation for the registry or the recording of instruments or matters affecting property liens or titles, the purpose of said section 10016 was to provide a public place and means where all who might be interested in such matters could search for the desired information. The statute must be construed in the light of the evils remedied and the objects sought. As said in 45 Am. Jur., Records and Recording Laws, section 81:

"The main purpose of recording instruments is to give constructive notice to subsequent purchasers and encumbrancers. *Statutes providing for such recordation give no substantive rights in themselves.*" (Italics ours.)

See, also, Federal Land Bk. v. Pace, 87 Utah 156, 48 P. 2d 480, 102 A. L. R. 819.

In Noyes v. Crawford, 118 Iowa 15, 21, 22, 91 N. W. 799, 801, 96 Am. St. Rep. 363, the court said:

"The recording act is for the benefit of subsequent purchasers only (Code [1897], section 2925) * * *." And the opinion continues with this quotation from 1 Freeman, Judgments, section 201:

" 'Generally, the statute authorizing a registration of writings does not make them void while unregistered, but merely protects from their operation innocent purchasers from the parties thereto, or some of them.' "

Section 10016 states certain requirements: (1) the instrument must be in writing (2) it must be executed by the vendor and vendee (3) it must be acknowledged by the vendor or vendee (4) it must be filed or recorded, and indexed, etc. All these requirements are essential for recordation and the effecting thereby of constructive notice. The failure to fulfill any of these requisites does not destroy the validity of the contract generally or for all purposes but merely renders it invalid to the extent of making it ineligible for recording and thereby preventing constructive notice to the classes or beneficiaries named in and within the protection of the statute.

The able trial judge expressed some doubt during the trial as to whether Exhibit A was admissible on the issue of constructive notice, but the opinion and judgment of the court states:

"Clearly the provisions of Section 10016 govern this transaction, and the intervener's conditional sales contract having been executed only by the vendee, and therefore not coming within the plain provisions of the statute, was not valid as against the plaintiff and purchaser without notice," meaning, no doubt, without notice either actual or constructive.

Clearly, since Exhibit A was not executed by both the vendee and vendor it was not eligible for record and its recording gave no constructive notice to the appellee. We find no merit in this assignment of error.

■ IV. Appellant complains because of the reopening of the case long after it was closed and fully submitted on written briefs and arguments. The full limit of liberality and leniency was extended to the appellee. We seriously question whether appellee had either pleaded or proved its case when it rested the first time. The burden was on it to plead and prove it was a purchaser for value without notice. Loranz & Co. v. Smith, 204 Iowa 35, 42, 43, 214 N. W. 525, 53 A. L. R. 662; Manbeck Motor Sales Co. v. Garside, 208 Iowa 656, 657, 226 N. W. 9; Diemer v. Guernsey & Johnson, 112 Iowa 393, 396, 83 N. W. 1047; Zacharia v. Cohen Co., 140 Iowa 682, 685–688, 119 N. W. 136; Chariton & Lucas County Nat. Bk. v. Taylor, 210 Iowa 1153, 1159, 232 N. W. 487; Blackman v. Henderson, 116 Iowa 578, 581, 582, 87 N. W. 655, 56 L. R. A. 902; Ohio Sav. Bk. & Tr. Co. v. Schneider, 220 Iowa 938–940, 211 N. W. 248; State Sav. Bk. v. Universal Credit Corp., supra, 233 Iowa 247, 254, 8 N. W. 2d 719. Although there was testimony as to lack of notice there was no such allegation in the petition.

As evidence that it was a purchaser for value plaintiff did scarcely more than introduce its mortgage. The burden was on it to show the validity of the mortgage in that it was executed by those having title to the property. This may not be presumed from the mortgage itself, particularly against one not a party to the mortgage. See First Nat. Bk. v. Maxwell, 198 Iowa 813, 815, 200 N. W. 401; Syck v. Bossingham, 120 Iowa 363, 366, 94 N. W. 920; Everett v. Brown, 64 Iowa 420, 422, 20 N. W. 743; Bensen & Marxer v. Reger, 186 Iowa 19, 21, 168 N. W. 881, 172 N. W. 166; Warner v. Wilson, 73 Iowa 719, 720, 36 N. W. 719, 5 Am. St. Rep. 710; Lee County Sav. Bk. v. Snodgrass Bros., 182 Iowa 1387, 1392, 166 N. W. 680.

■ No grounds were alleged in its motion to set aside the submission and reopen the trial. The relief asked rested in the judicial discretion of the court and had it been denied there would have been no abuse of discretion. Under the circumstances we conclude that there was no abuse of discretion in granting the relief. The court no doubt was convinced that the equities of the cause were with the appellee, and rightly so. The appellee and the intervener were innocent parties who were deceived by a swindler. The intervener had its place of business at Hamp-

ton and knew that the contract for the truck was on file in the county recorder's office there. It was a matter of little inconvenience to it to ascertain whether the statute had been complied with in the execution and filing of the contract. It knew that the vendee had paid nothing on the contract since its execution, yet it permitted him to retain possession of the truck. We agree with the conclusion of the court in Central Tr. Co. v. Stepanek, supra, 138 Iowa 131, 136, 137, 115 N. W. 891, 893, 15 L. R. A., N. S., 1025, 128 Am. St. Rep. 175, that:

"The controversy is one of those in which unfortunately one of two innocent parties must suffer a substantial loss, and, as we have already seen, the law leaves the burden upon the one whose omission made the perpetration of the fraud possible."

V. Appellant's last assignment that the court erred in giving judgment to appellee is so indefinite that we are compelled to disregard it.

The judgment is—Affirmed.

GARFIELD, C. J., and HAYS, MULRONEY, OLIVER, SMITH, MANTZ, and WENNERSTRUM, JJ., concur.