HARRY LANKHORST, JR., Appellee, v. UNION FIRE INSURANCE COMPANY, Appellant.

No. 46756.

OCTOBER 16, 1945.

Claude S. Wilson, of Lincoln, Nebraska, and T. E. Klay, of Orange City, for appellant.

Sifford, Wadden & Jepson, of Sioux City, for appellee.

MULRONEY, J.—Plaintiff was the owner of an alleged unoccupied moving-picture theater in Hawarden, Iowa. On January 4, 1944, the theater and its contents were destroyed by fire. Plaintiff brought suit against the defendant insurance company

upon a fire-insurance policy insuring the furniture and fixtures for one year against loss by fire in the sum of $1,000 and the contents of the motion-picture booths in the sum of $1,500. The petition set forth a copy of the policy dated March 23, 1943. The policy contained a clause (IV. c.) to the effect that, unless otherwise provided by agreement, the policy would be void if the building became unoccupied and remained so for ten consecutive days. One of the three riders attached to the policy was entitled ''Vacancy Or Unoccupancy Permit No. 1.'' It purported to grant permission for the premises to remain unoccupied for six months or until September 23, 1943. The petition alleged that the limitation of six-months' unoccupancy in the policy was a mutual mistake and that the real intention of the parties was to grant insured permission for the premises to remain unoccupied for one year. The prayer was for reformation of the policy extending the unoccupancy permit to March 23, 1944, the date of the expiration of the policy, and for judgment on the policy as reformed in the sum of $2,500. Defendant's answer denied that the policy was in force at the time of the fire by reason of the unoccupancy clause and denied that there was any mistake in not granting an unoccupancy permit for one year. The trial court, after hearing the evidence, rendered a decree in plaintiff's favor, granting reformation that extended the unoccupancy permit to March 23, 1944, and granting judgment to plaintiff for $2,500.

It was stipulated that if plaintiff was entitled to recover at all, he was entitled to the full amount of the policy, or $2,500, so the decision hinges on plaintiff's right to have the policy reformed on the ground of mutual mistake. The rule is that the evidence to establish such mistake must be clear, satisfactory, and convincing. See Den Hartog v. Home Mut. Ins. Assn., 197 Iowa 143, 146, 196 N. W. 944, and cases there cited.

The record shows that plaintiff was the owner of two moving-picture theaters in Hawarden. One theater, which was still operating at the time of trial, had been owned and operated by plaintiff for eleven years. He acquired the one which was later destroyed by fire in February of 1942. He ran this theater for four or five months and then closed it. He applied

for the insurance policy about March 23, 1943. He testified that he told Ellis Wood, the local agent for the defendant, that he wanted a policy that would protect him from fire for a year "whether it was operated or not." The theater was closed at the time the policy was applied for and plaintiff testified:

"I told Ellis I wanted the policy for a year. He was to get me $1,500 for the equipment in the booth and $1,000 for the property outside the booth. I talked with him about the fact I wanted it to cover the property even if the building remained in the same condition as it was. I told him I wanted a policy for this period. I wanted to be covered; it wasn't being operated at the time and I wanted a policy to cover it because I didn't know when I would operate again in the future, and I wanted to be protected again for a year on the policy."

Ellis Wood testified that he was engaged in the general insurance business in Hawarden, Iowa, representing, among other companies, the defendant fire-insurance company of Lincoln, Nebraska. He took applications for policies, sent them to the company in Lincoln, and the company would write the policy and send it to him for his signature, and he would deliver it to the insured. He stated that plaintiff had asked for this policy shortly before March 23, 1943, at his office; that:

"He asked for insurance of $2,500 on the contents of the building and I think when I looked up the rates I found we had two rates on contents and part of it had to be written on the contents of the booth and part of it on the balance of the contents of the building. I believe I made that division. He told me about the condition of this building at that time. He said it wasn't being run steady; that he was operating it at times but not continuously. I think I was the one probably that said there would have to be a vacancy permit on there. I wasn't sure then what they would require but would find out. I heard Mr. Lankhorst testify that he asked me for a policy of insurance to run for a year whether the building was occupied or vacant. Q. And did he ask you for a policy of insurance that would cover this property, this personal property

referred to for a year, whether the building was being operated as a moving picture house or not? * * * A. He did."

Wood further testified that after this conversation the plaintiff left his office and he prepared the application for the policy and signed plaintiff's name to the application. He did not think that he wrote the word "idle" on the application with reference to the theater building but he was sure that he informed the company in some manner that the building was in fact idle. He thought that he had talked to Mr. J. W. Holahan, field man for defendant, telling him the circumstances concerning the closed theater, and that he had written the company explaining the unoccupancy. At any rate, it is obvious that he did call this to defendant's attention in some manner, for he received a letter from the company acknowledging receipt of the application, in which they asked for additional information with regard to why the theater was closed, etc. His letter of reply assured the company that there was no moral hazard to the risk; that plaintiff owned both of Hawarden's shows and this one was "temporarily idle" due to the fact that so many boys had left for the armed services and eighty citizens had left to work on the Alaskan Hi-way. When defendant issued the policy it sent it to Wood with a letter stating:

"We are enclosing our policy FW-296059, Harry Lankhorst, Jr., covering contents of idle theatre, pending the approval of our Special Agent. As we explained in our letter of March 25, frame theatres are on our prohibited list and ordinarily a risk of this class would have been declined. You will note we have attached an unoccupancy permit, charging the additional premium therefor in accordance with the rate book. This is included in the total amount of premium."

Wood testified he signed the policy and delivered it to plaintiff. He stated that he did not know, when he delivered the policy, that it contained the vacancy or unoccupancy clause for only six months; that he "didn't tell Lankhorst before or after September 23, 1943, that this vacancy and unoccupancy permit had expired." He stated: "I didn't know it wasn't on

there for the entire year." Lankhorst, too, testified that he did not read over the policy and he did not know at the time the policy was delivered that the vacancy and unoccupancy permit was for six months only. He stated it was never called to his attention at any time until after the fire. He paid the premium on the policy when he was billed for it by Wood.

When we consider that Wood was the agent for the defendant company, and his knowledge was the company's knowledge, we feel that the foregoing evidence is sufficiently clear, satisfactory, and convincing to warrant a conclusion that a mutual mistake occurred. The equitable rule with respect to the reformation of an insurance policy on the ground of mistake is the same rule that governs the reformation of any other contract. There must be the proof of the mistake and of its mutuality. The mistake in the contract must be shared by both parties to the contract before equity can grant a decree reforming the contract to the true meaning and intent of the parties. Insofar as the insured is concerned, it is clear that a mistake in the terms of the contract occurred. Clearly, he thought and believed that the contract of insurance which he had negotiated with defendant's agent covered him against loss by fire of the personal property described in the insurance contract, for one year, in the theater in its unoccupied condition at the time he entered into the negotiations for the policy. What did the insurer intend and believe? The insurer is a corporation. It acts only through agents. The policy contract was negotiated by Wood. Wood was the agent with delegated authority to negotiate in behalf of defendant. He testifies that he knew all the facts with reference to the theater building being unoccupied. He filled out the application for the policy. He, in effect, told plaintiff that he would secure for him a policy upon the personal property in the unoccupied theater for one year. He informed the company of the fact that the theater was unoccupied. After such information he received a policy and a letter which in general terms informed him that the policy covered "contents of idle theatre" and called his attention to an attached "unoccupancy permit," without in any manner calling his attention to the fact that the unoccupancy permit was for only

six months. Under such a record we answer the question of what the company thought and believed by reference to the testimony of defendant company's agent Wood, where he stated: "I didn't know it [unoccupancy permit] wasn't on there for the entire year." Thus the mutuality of the mistake is complete.

The evidence with respect to the negotiations for the policy is practically without dispute. It presents a more satisfactory ground for reformation than the situation where the mistake is due to the negligence of the insurer's agent or the latter's failure to disclose facts within his knowledge to the insurer's home office. And yet courts generally have recognized that reformation can be had though the mistake on the insurer's part was due to such agent's negligence or failure to disclose.

In Den Hartog v. Home Mut. Ins. Assn., 197 Iowa 143, 146, 196 N. W. 944, 945, the application was signed in blank upon the request of the agent. The agent asked a few questions of the insured but no direct question as to the extent of the insured's ownership. He secured most of the data necessary for filling out the application from an old policy. When the company later attempted to avoid liability on the ground that there were two owners, the plaintiff sought reformation. The decree granting such reformation was affirmed, the opinion stating:

"It is * * * well settled that, in case a mistake is made, due to the negligence of the agent of the insurer, acting within the scope of his employment, a satisfactory ground for reformation is present." (Citing cases.)

In Fitchner v. Fidelity Mut. F. Assn., 103 Iowa 276, 280, 72 N. W. 530, 531, the application was for insurance on a building and stock of merchandise. The application fixed the total concurrent insurance on the building and stock at $12,000. In a suit to reform the policy, which contained the same limitation, the insured contended the $12,000 limit should have been confined to the stock. The evidence clearly showed that the agent knew the insured was placing other insurance on the stock alone up to $12,000, and that he completed filling out the insurance application. In allowing reformation, we stated:

844

"Doughty [the insurance agent] had the information that the firm [insured] then desired and was placing twelve thousand dollars of concurrent insurance on the merchandise, and the company was charged with the same knowledge. * * * Whether a soliciting agent may enter into a contract with reference to insurance is not involved in this case. Doughty was bound to set out the material facts as stated by Laub in the application, and, through a mistake on his part, failed to do so. * * * Here the mistake has been carried into the policy. This the company issued on the basis of facts disclosed to the agent, and the conditions as they existed, and of which it is presumed to have knowledge. Having accepted and retained the premium and issued its policy, it is presumed to have intended to do so with reference to existing conditions known to it; and its failure to do so, while it may have resulted from the mistake of its agent, amounted to a fraud on the plaintiff. That equity will grant relief in such cases is not an open question. See Boetcher v. Insurance Co., supra; Esch v. Insurance Co., 78 Iowa, 334; Barnes v. Insurance Co., supra; Jamison v. Insurance Co., 85 Iowa, 229."

With reference to the duty of the insured to read over the application filled out by the agent or the policy issued on such application, we stated, in the foregoing opinion:

"Doughty was the agent of the company, and acted in that capacity in preparing the applications. The insured ordinarily rely upon the agent to properly set out the facts in the applications, and Laub did as men usually do, in assuming that the defendant's agent had done his duty. Stone v. Insurance Co., 68 Iowa, 737; McComb v. Insurance Co., 83 Iowa, 247. The mere failure of the assured to read his application, or the copy of it on the policy, does not establish negligence. Bennett v. Insurance Co., 70 Iowa, 600; Hagan v. Insurance Co., 81 Iowa, 321; Donnelly v. Insurance Co., 70 Iowa, 693; Boetcher v. Insurance Co., 47 Iowa, 353. Nor is the mere omission to read the policy negligence. Barnes v. Insurance Co., 75 Iowa, 11; Jamison v. Insurance Co., 85 Iowa, 229; Boetcher v. Insurance Co., supra. Laub had no reason to suppose the policy and applica-

tion were drawn differently than understood. As to matters affecting the rights of the firm at the time the policy was delivered, or in the future, it must be charged with notice, but the law did not require him to search through the policy to ascertain past mistakes or misstatements of the agent or company.''

In Mortenson v. Hawkeye Casualty Co., 234 Iowa 430, 12 N. W. 2d 823, the agent knew of the insured's plan of business of arranging with a travel bureau to have his used cars driven to California. The insured told the agent he sought insurance to cover the cars en route. We held that the policy could be reformed to exclude certain provisions against the carrying of persons for hire.

See, also, Independent Sch. Dist. of Doon v. Fidelity Ins. Co., 113 Iowa 65, 84 N. W. 956; Funk v. Anchor Fire Ins. Co., 171 Iowa 331, 153 N. W. 1048; Walrod v. Des Moines Fire Ins. Co., 159 Iowa 121, 140 N. W. 218; Sargent v. American Ins. Co., 218 Iowa 430, 253 N. W. 613; Green v. Phoenix Ins. Co., 218 Iowa 1131, 253 N. W. 36.

There is other evidence in the case bearing upon other issues making it arguable whether the property was in fact unoccupied and whether the company waived the alleged breach by proceeding to investigate the loss after the fire. Because we believe the trial court was right in reforming the policy to include unoccupancy permission for the full year we need not consider issues which would be material only if the policy was not reformed. The decree of the trial court is affirmed.— Affirmed.

MILLER, C. J., and OLIVER, BLISS, GARFIELD, WENNERSTRUM, SMITH, and MANTZ, JJ., concur.

HALE, J., not sitting.