## METROPOLITAN CASUALTY INS. CO. OF NEW YORK et al. v. FRIEDLEY et al.

### Civil Action No. 421.

United States District Court
N. D. Iowa, E. D.
Oct. 2, 1948.

---

Donald N. Clausen, of Chicago, Ill., and Sterling Beers, of Waterloo, Iowa, for plaintiffs.

R. F. Merner and Reno R. Reeve, both of Cedar Falls, Iowa, for defendants.

Craig H. Mosier, of Waterloo, Iowa, guardian ad litem for defendant Maynard Kroemer.

GRAVEN, District Judge.

Action for a declaration of nonliability on an automobile liability insurance policy under the Federal Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, following a mishap with the claimed insured automobile, involving waiver, estoppel, and reformation.

On November 13, 1946, the defendant Glenn Fairhurst, a resident of the City of Cedar Falls, Iowa, purchased a 1937 Dodge automobile in the City of Waterloo, Iowa, for $637.50 which he paid in cash from his own funds. The City of Waterloo and the City of Cedar Falls lie close together. While Glenn Fairhurst was at the home of the seller in the City of Waterloo, Iowa, counting out the money in payment of the purchase price, M. L. Trookman, an agent of the plaintiffs in the Waterloo area, came into the house. M. L. Trookman was introduced to Glenn Fairhurst as the insurance agent with whom the seller had had insurance. M. L. Trookman started to discuss the matter of insurance on the automobile with Glenn Fairhurst. They did not complete their discussion and made arrangements to meet at the home of defendant Grace Friedley, mother of Glenn Fairhurst, that afternoon to discuss the matter further. At the Friedley home that afternoon, M. L. Trookman was informed that Glenn Fairhurst was a minor, nineteen years of age. M. L. Trookman then explained that neither plaintiffs nor other insurance companies

insured minors against automobile liability, but stated that if the registration certificate were put in Mrs. Friedley's name it would be possible to insure Glenn Fairhurst in that way. Mrs. Friedley then asked Mr. Trookman if she would be getting herself liable in any way if there was an accident. Mr. Trookman assured her she would not and that that was the way most insurance companies handled it in the case of minors. The parties stipulated that one L. V. Miller whom defendants intended to call as a witness would testify that he was an agent for five insurance companies and that it was possible for a minor to secure insurance for public liability and other damage in those companies. M. L. Trookman then handled the details of having the automobile registered in Mrs. Friedley's name. Glenn Fairhurst paid the premium from his own funds. M. L. Trookman gave Mrs. Friedley a receipt for the premium payment for the year from November 13th, 1946, to November 13th, 1947. Plaintiffs then issued Policy No. F M 141 insuring Mrs. Grace Friedley to the extent of $5000 against liability for property damage and to the extent of $5000 for each person or $10,000 for each mishap against personal injury liability arising out of the ownership, maintenance, or use of the automobile, and against fire and theft of the automobile. The automobile described in the policy was the 1937 Dodge automobile. M. L. Trookman countersigned the policy as plaintiffs' "authorized agent."

Sometime in February, 1947, Glenn Fairhurst sold the 1937 Dodge automobile and purchased with his own funds a 1935 Ford automobile which he registered in his own name. Shortly after the purchase, Glenn Fairhurst called M. L. Trookman on the telephone and told him he had sold the Dodge and bought a 1935 Ford. Mr. Trookman responded "O. K." and got from Glenn Fairhurst the serial number and other details about the Ford automobile. There was then attached to the policy a rider signed by M. L. Trookman as agent for the plaintiffs changing the coverage from the 1937 Dodge automobile to the 1935 Ford automobile. So far as appears, M. L. Trookman did not suggest that the 1935 Ford be registered in Mrs. Friedley's

name. Later a refund was given Glenn Fairhurst of the amount of the unused premium for fire and theft. That refund was made because the plaintiffs did not wish to insure the 1935 Ford against fire and theft because of its age. No other refund of the premium was or has been made or tendered.

The policy as issued by plaintiffs contained the following clause under the general heading Declarations:

"Item 7. Ownership: Except with respect to bailment lease, conditional sale, mortgage or other encumbrance the named insured is the sole owner of the automobile, except as stated herein: *No Exceptions.*"

The italicized words were typewritten in a blank provided for that purpose. Under the general heading Conditions the following clause appears:

"26. Declarations. By acceptance of this Policy the named insured agrees that the statements in the Declarations are his agreements and representations, that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between himself and the Company or any of its agents relating to this insurance."

The change of coverage rider contains the following clause:

"Nothing herein contained shall be held to vary, alter, waive or extend any of the Agreements, Conditions, Declarations, Exclusions, Limitations or Terms of the undermentioned Policy other than as above stated."

On June 16, 1947, while driving the 1935 Ford automobile, Glenn Fairhurst was involved in a mishap in which he came in contact with a motor scooter owned by defendant Maynard Kroemer and operated by defendant Sylvan Livingston. As a result of the mishap Maynard Kroemer suffered property damage to his motor scooter and Sylvan Livingston suffered personal injury damage.

Glenn Fairhurst notified M. L. Trookman of the mishap and he in turn notified plaintiffs. This suit was instituted by the plaintiffs on October 20, 1947, for a declaration of nonliability under the policy on

the theory that defendant Grace Friedley had breached the sole ownership clause previously set out. The parties defendant are Grace Friedley, Glenn Fairhurst, and the two possible claimants, Sylvan Livingston and Maynard Kroemer. Defendant Maynard Kroemer, being a minor, was represented by a guardian ad litem appointed by the Court. The defendants in their answer state that plaintiffs' authorized agent, M. L. Trookman, knew that Glenn Fairhurst was the owner of both the 1937 Dodge and the 1935 Ford automobiles and that Grace Friedley was the owner of neither, both when the original policy was issued and when the change of coverage rider was issued, that M. L. Trookman stated to Glenn Fairhurst and Grace Friedley that it would be necessary to register the Dodge in Grace Friedley's name because plaintiffs did not insure minors, and that upon such registration plaintiffs would issue a policy in Grace Friedley's name which would fully protect Glenn Fairhurst from liability for bodily injury and property damage that might be caused in the use of said automobile. Defendants contend such knowledge and representations by M. L. Trookman constitute a waiver of the sole ownership clause and plaintiffs are thereby estopped to set up a breach thereof.

It clearly appears from the record and none of the parties contend otherwise that the named insured, Grace Friedley, is under no liability as a result of the mishap which occurred June 16, 1947, because she was not the owner of the 1935 Ford automobile involved and was in no way responsible for the injuries sustained by Maynard Kroemer and Sylvan Livingston. Under such circumstances the doctrines of waiver and estoppel are of no avail to defendants. Even if facts justifying the invocation of waiver and estoppel are present, the policy would still inure to the benefit of Grace Friedley, the named insured, only, and she is under no liability.

Plaintiffs strongly rely on the registration of the 1937 Dodge automobile in the name of Grace Friedley as a basis for a declaration of nonliability under the policy. The matter of the registration and regulation of automotive vehicles in general is governed by Ch. 321 of the 1946 Code of Iowa, entitled "Motor Vehicles and Law of Road." Sec. 321.20 provides that "every owner of a vehicle subject to registration hereunder shall make application to the county treasurer, of the county of his residence" for registration, setting forth his name and address and a description of the vehicle to be registered. The Iowa Supreme Court has often held that such registration is not determinative of the ownership of the vehicle so registered. Union Bank & Trust Co. of Stanwood v. Willey, 1946, 237 Iowa 1250, 24 N.W.2d 796; Garuba v. Yorkshire Ins. Co., 1943, 233 Iowa 579, 9 N.W.2d 817; Craddock v. Bickelhaupt, 1939, 227 Iowa 202, 288 N.W. 109, 135 A.L.R. 474; Abraham v. Hartford Fire Ins. Co., 1932, 215 Iowa 1, 244 N.W. 675; Tigue Sales Co. v. Reliance Motor Co., 1928, 207 Iowa 567, 221 N.W. 514; Shepard v. Findley, 1927, 204 Iowa 107, 214 N.W. 676; Cerex Co. v. Peterson, 1927, 203 Iowa 355, 212 N.W. 890; Davenport v. Pierce, 1922, 194 Iowa 1152, 190 N.W. 942. When ownership is in issue registration is one fact to be considered, but it can be overcome by other evidence. Craddock v. Bickelhaupt, supra; Abraham v. Hartford Fire Ins. Co., supra; Tigue Sales Co. v. Reliance Motor Co., supra. In Garuba v. Yorkshire Ins. Co., supra, the defendant insurance company successfully defended a suit by the named insured on a collision policy by showing a sale of the insured automobile by the insured, notwithstanding the fact that the registration certificate was still in the name of the insured as owner of the automobile.

In referring to the predecessor of Ch. 321 of the 1946 Code, the Iowa Court said in Davenport v. Pierce, 1922, 194 Iowa 1152, 190 N.W. 942, at pages 942, 943:

"The statutes of the state prescribing regulations for the licensing, registering, and regulating and the buying, selling, registration, and operation of motor vehicles have no direct relation to the rights and equities which may exist as between successive owners or purchasers of such property. Their primary purpose is dual—to promote the safe and convenient use of the public highway by this class of vehi-

cles and as well to insure regular and prompt payment of license fees and taxes imposed thereon."

In its latest pronouncement, the Iowa Court in Union Bank & Trust Co. of Stanwood v. Willey, 1946, 237 Iowa 1250, 24 N.W.2d 796, quoted the above language from the Davenport case with approval and continued, 24 N.W.2d at page 804:

"They are to be construed in the light of and in accord with the purposes and objects of its provisions."

■ In the present case, the fact that the 1937 Dodge automobile was registered in the name of Grace Friedley is clearly not sufficient to establish ownership of said automobile in her. Grace Friedley, Glenn Fairhurst, and Sylvan Livingston all testified to the purchase of the automobile by Glenn Fairhurst with his own funds and to the registration of the automobile in Grace Friedley's name solely to facilitate the obtaining of insurance from plaintiffs, in accord with the recommendation and suggestion of M. L. Trookman, plaintiffs' agent. M. L. Trookman was not called as a witness. The evidence clearly shows the ownership of both the 1937 Dodge and the 1935 Ford in Glenn Fairhurst.

It appears that the real issue involved is whether the contract should be reformed so as to make Glenn Fairhurst, the owner of the automobiles, the named insured in the policy.

■ Proceedings under declaratory judgment acts are governed by the established applicable rules of pleading. Aralac, Inc., v. Hat Corporation of America, 3 Cir., 1948, 166 F.2d 286, 290; State v. General American Life Ins. Co., 1937, 132 Neb. 520, 272 N.W. 555; Newsum v. Interstate Realty Co., 1925, 152 Tenn. 302, 278 S.W. 56; Anderson, Declaratory Judgments, Sec. 80; Borchard, Declaratory Judgments (2d ed.) p. 209. And there appears to be no sound reason why reformation cannot be pleaded defensively in an action. See annotation to the case of Fitch v. Lomax, Tex.Com.App.1929, 16 S.W.2d 530, 66 A.L.R. 758, 763. In the very recent case of Rock-Ola Mfg. Corporation v. Filben Mfg. Co., 1948, 168 F.2d

919, the appellee raised the question but the United States Court of Appeals for the Eighth Circuit found no grounds for reformation and did not specifically pass upon the question. However, there is no indication in the language of the opinion that that Court would disapprove the practice when squarely faced with the problem. It is the view of the Court that in a declaratory judgment action seeking a declaration of the rights of the parties to a contract that reformation can be used defensively.

■ Although the defendants in this case did not specifically request reformation in their pleadings, if they have pleaded and proved facts justifying reformation such relief may be granted under Rule 54(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. That Rule, so far as here material, provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." In commenting on this Rule, the Court of Appeals for the District of Columbia said in Keiser v. Walsh, 1941, 73 App.D.C. 167, 118 F.2d 13, at page 14:

"We need not consider whether appellant has asked for the proper relief. * * * a complaint is sufficient if it sets forth facts which show that the plaintiff is entitled to any relief which the court can grant."

See, also, Gardner v. Mid-Continent Grain Co., 8 Cir., 1948, 168 F.2d 819.

■ The majority of jurisdictions have held that where the pleadings and evidence would warrant reformation of the instrument in question, the court may in its discretion give effect to the intended contract and enforce it as if it were reformed, without any formal decree of reformation. See cases in annotation to Fitch v. Lomax, Tex.Com.App.1929, 16 S.W.2d 530, 66 A.L.R. 758, 767; Restatement—Contracts, Sec. 507. It is believed the better practice, however, where sufficient grounds are shown, to formally decree reformation.

■ As jurisdiction in this case is based upon diversity of citizenship, the substantive law of Iowa is controlling. Erie R. Co. v. Tompkins, 1938, 304 U.S.

64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

 It is universally held that a contract of insurance may be reformed when the policy as written either through fraud or mutual mistake does not conform to the intent of the parties to the contract. 44 C.J.S., Insurance, § 279; 29 Am.Jur., Insurance, Sec. 241. The Iowa Supreme Court has often reiterated this rule. Lankhorst v. Union Fire Ins. Co., 1945, 236 Iowa 838, 20 N.W.2d 14; Mortenson v. Hawkeye Casualty Co., 1944, 234 Iowa 430, 12 N.W.2d 823; Green v. Phoenix Ins. Co., 1934, 218 Iowa 1131, 253 N.W. 36; Norem v. Iowa Implement Mut. Ins. Ass'n, 1923, 196 Iowa 983, 195 N.W. 725; Fitchner v. Fidelity Mut. Fire Ass'n, 1897, 103 Iowa 276, 72 N.W. 530; Barnes v. Hekla Fire Ins. Co., 1888, 75 Iowa 11, 39 N.W. 122, 9 Am.St.Rep. 450. The United States Court of Appeals for the Eighth Circuit has recently stated the rule in Rock-Ola Mfg. Corporation v. Filben Mfg. Co., 1948, 168 F.2d 919, at page 923:

"Reformation of a contract can ordinarily be had only where the contract as executed fails to express the intention of the parties as the result of accident, inadvertence, mistake, fraud, or inequitable conduct, or where there has been both fraud and mistake, as a unilateral mistake induced by fraud."

To be entitled to reformation, the party requesting it must produce clear and convincing proof. Westercamp v. Smith, Iowa, 1948, 31 N.W.2d 347; Jorgensen v. Allied Mut. Casualty Co., 1942, 232 Iowa 156, 5 N.W.2d 167; Sargent v. American Ins. Co., 1934, 218 Iowa 430, 253 N.W. 613.

 The problem of the authority of a mere soliciting agent to bind his insurance company has been the subject of much judicial comment. The Iowa decisions have held that the agent's knowledge at the time of the making of the contract is binding on the company and when contrary provisions appear in the policy the insured is entitled to reformation to conform with the agreement between the agent and the insured. Lankhorst v. Union Fire Ins. Co., 1945, 236 Iowa 838, 20 N.W.2d 14;

Mortenson v. Hawkeye Casualty Co., 1944, 234 Iowa 430, 12 N.W.2d 823; Green v. Phoenix Ins. Co., 1934, 218 Iowa 1131, 253 N.W. 36; Smith v. National Fire Ins. Co., 1926, 201 Iowa 363, 207 N.W. 334; Dalton v. Milwaukee Mechanics' Ins. Co., 1905, 126 Iowa 377, 102 N.W. 120; Barnes v. Hekla Fire Ins. Co., 1888, 75 Iowa 11, 39 N.W. 122, 9 Am.St.Rep. 450. This includes the common situation in which the agent is told or personally knows the situation of the insured when he requests a particular kind of coverage. Green v. Phoenix Ins. Co., supra; Esch v. Home Ins. Co., 1889, 78 Iowa 334, 43 N.W. 229, 16 Am.St.Rep. 443. See, also, Carey v. Home Ins. Co., 1896, 97 Iowa 619, 66 N.W. 920. It also includes the equally common situation in which the insured explains his situation to the agent and leaves it to him to decide what form of policy should be written. Lankhorst v. Union Fire Ins. Co., supra; Mortenson v. Hawkeye Casualty Co., supra; Dalton v. Milwaukee Mechanics' Ins. Co., supra; Barnes v. Hekla Fire Ins. Co., supra. Cases from other jurisdictions in accord with the Iowa rule include Preferred Accident Ins. Co. of New York v. Onali, 8 Cir., 1942, 125 F. 2d 580, affirming D.C.Minn.1942, 43 F.Supp. 227; Carson v. Home Fire & Marine Ins. Co., 5 Cir., 1930, 39 F.2d 50; Keetley v. Norwich Union Indemnity Co., D.C.Minn. 1948, 77 F.Supp. 235; Consolidated Lumber Co. v. Mercury Ins. Co., 1933, 189 Minn. 370, 249 N.W. 578; Heath Delivery Service v. Michigan Mut. Liability Co., 1932, 257 Mich. 482, 241 N.W. 191; and Hould v. Maryland Casualty Co., 1929, 83 N.H. 474, 144 A. 261. See, also, annotation to Dickenson County Bank v. Royal Exchange Assurance of London, England, 1931, 157 Va. 94, 160 S.E. 13, 76 A.L.R. 1209, 1218; 29 Am.Jur., Insurance, Secs. 242 and 248.

The Minnesota Supreme Court has well stated the rule in Consolidated Lumber Co. v. Mercury Ins. Co., supra, 249 N.W. 580:

"The courts have rather zealously guarded the rights of the insured and have indulgently overlooked the careless way in which the ordinary person leaves his rights to the protection of the insurer who cannot be unaware thereof. The practice is very common for the insured to leave

984

the matter of his insurance very largely in the care and protection of the insurer, who usually better understands his requirements and the opportunities that are available. There is plenty of precedent to show that the courts have been liberal in the reformation of insurance contracts, to carry out the intention of the parties, which by reason of a mutual mistake has not been correctly reduced to writing in the policy."

The distinction must be noted between the power of an agent such as M. L. Trookman in the present case to bind his company by his knowledge and representations at the time of the inception of the contract and his power to bind his company by waiver of conditions or making of collateral agreements or other negotiations with the insured after a contract of insurance has already been agreed upon between the parties and has been issued by the company. The Iowa cases have recognized this distinction. Lankhorst v. Union Fire Ins. Co., 1945, 236 Iowa 838, 20 N.W. 2d 14; Smith v. National Fire Ins. Co., 1926, 201 Iowa 363, 207 N.W. 334; Fitchner v. Fidelity Mut. Fire Ass'n, 1897, 103 Iowa 276, 72 N.W. 530. It is not necessary to the decision in this case to determine what power, if any, M. L. Trookman had to bind plaintiffs by agreements or representations made to the insured after the issuance of the policy in question. The Iowa cases previously cited uniformly hold that the knowledge and representations of an agent, such as M. L. Trookman in the present case, at the time of the making of the contract are binding on the company.

 It seems plain from the evidence that plaintiffs' authorized agent, M. L. Trookman, knew at the time of the issuance of the original policy and throughout the negotiations leading up to the issuance of said policy that Glenn Fairhurst was the sole owner of the 1937 Dodge automobile and that Grace Friedley had no right, title, or interest in said automobile. Through a mistake on the part of M. L. Trookman the policy as written did not on its face protect Glenn Fairhurst from personal injury and property damage liability as the parties clearly intended that it should. A case for reformation on the grounds of mutual mistake has been made.

It is the holding of the Court that Policy No. F M 141 be reformed to read that Glenn Fairhurst is the named insured in said policy, and that plaintiffs' request for a declaration of nonliability be denied.