Allen Heikes, appellee, v. Farm Bureau Insurance Company of Nebraska, a Nebraska corporation, appellant.

151 N. W. 2d 336

Filed June 2, 1967. No. 36482.

Jewell & Otte, for appellant.

Smith, Smith & Boyd, for appellee.

Heard before White, C. J., Carter, Spencer, Boslaugh, Smith, and McCown, JJ.

Smith, J.

The district court reformed a multiple-line policy of insurance to provide fire coverage on potatoes in storage. Plaintiff, whose potatoes in storage had been destroyed by fire, was also awarded the amount of the loss under his reformed policy. The issue on appeal is the responsibility of defendant insurer for misrepresentations by its soliciting agent.

The policy, known as the Country Squire, has twelve pages. The boxed section shows a premium charge of $75 for "Blanket Farm Personal Property Coverage D" with a $25,000 limit of liability. On page 3 the heading "Description of Property * * * Covered * * * Coverage D—Blanket Farm Personal Property" appears in bold-

face.   Under the heading 100 half-page lines in smaller print read in part as follows:

"This policy covers all Farm Personal Property * * * usual and incidental to the operation of a farm, except as hereinafter provided * * *.  (c) Grain * * *, hay, straw and fodder in stacks are covered against fire only.  (d) Grain, threshed seeds, threshed beans, hay, straw, fodder, silage * * * are also covered while removed from the premises * * * (with exceptions).  (e) Property insured under Coverage D shall not include * * * Tobacco, cotton, vegetables, root crops, bulbs and fruit."

Defendant had appointed the soliciting agent, Lyman D. Piepho, to promote and develop its business.  It had negated his authority to contract or receive any money except first premiums.  Piepho attended a school and periodic meetings held by defendant.  He was equipped with an underwriting manual, advertising material, and a state license.

Plaintiff, a tenant farmer, raised potatoes only, storing them in a cave until 1964.  During that period defendant issued him some policies which are not described, but he had no fire coverage on potatoes.  On July 30, 1964, construction of a potato storehouse on the farm was in the final stage.

Plaintiff and his wife had talked with Piepho at the farm on July 23, 1964, about coverage on the storehouse and all personal property.  A week later Piepho inspected the storehouse.  He informed plaintiff and wife that the Country Squire covered in storage potatoes against fire.  During the conversation Piepho displayed defendant's 8-page advertisement which is attractively colored and illustrated.  The relevant part reads as follows:

"NOW The Country Squire Policy Provides all the protection you need in one policy * * *.  One Policy covers your complete farming operations * * * Coverage D Farm Personal Property The Country Squire Covers All your Farm * * * Personal Property * * *.  80% CO-

INSURANCE CLAUSE. In order to fully protect your property and to enable your company to grant these many extra coverages, it is necessary that you agree to carry insurance to 80% of the sound value of your farm personal property. * * * This applies only to Item 1, Farm Personal Property.

"STOP! for a moment and think of the large investment you have in your farm personal property. YOU CAN'T AFFORD TO PRESUME that you are protected . . . YOU MUST KNOW that your protection has kept pace with your progress!"

In the course of negotiations Piepho produced defendant's form of application. It provides space for an inventory of farm personal property including small grain, corn, soybeans, hay, straw, and silage. In the application plaintiff's property was first valued at $40,000, of which $15,000 was for potatoes. After an explanation of the coinsurance provision Piepho scratched out the item potatoes in order to reduce the total to $25,000. Plaintiff knew, we infer, about the deletion as well as the reduction. A second application was signed in blank by plaintiff, and Piepho filled it out subsequently. It shows values for potato diggers, potato harvester, potato washer, drying fan, and potato sorter. Potatoes are unlisted. The first application was retained by Piepho, and the policy was issued on the second application. Piepho obtained plaintiff's check for the balance of the premium charge at the time of delivery.

Both Piepho and plaintiff in good faith were acting on the misconception that potatoes in storage were covered. The deletion from the application affected total valuation alone, because the inventory was not intended to delimit the subject of insurable interest. Although Piepho had sold 60 Country Squire policies, he admittedly did not know about the exception. At the scene of the fire he said, according to disinterested witnesses, that coverage on the potatoes was ample under the coinsurance clause.

The chief underwriter testified that defendant had not written fire and extended coverage on potatoes. The premium rate was $1.04 or $1.30, depending upon inclusion of an 80% coinsurance clause. Plaintiff's premium rate was $0.30.

In prescribing the standard fire policy, the Legislature did not abrogate the right to reformation in respect to permissible subjects of insurable interest. See, Conte v. Yorkshire Insurance Co., 5 Misc. 2d 670, 163 N. Y. S. 2d 28; Leisen v. St. Paul Fire & Marine Ins. Co., 20 N. D. 316, 127 N. W. 837, 30 L.R.A.N.S. 539; Mercer v. Germania Fire Ins. Co., 88 Or. 410, 171 P. 412; Franklin Fire Ins. Co. v. Bolling, 173 Va. 228, 3 S. E. 2d 182; Welch v. Fire Association, 120 Wis. 456, 98 N. W. 227; Gould v. Pennsylvania Fire Ins. Co., 174 Wis. 422, 183 N. W. 245.

If conduct or knowledge of the insured has not counteracted misbehavior of the soliciting agent, responsibility is often allocated to the insurer. The soliciting agent is deemed to all intents and purposes an agent of the insurance company. §§ 44-103 (8), 44-328, and 44-329, R. R. S. 1943. An insurance policy may be reformed to express the actual agreement between the soliciting agent and the insured in accordance with controlling equities. The single circumstance that the insured failed to examine his policy prior to the loss is ordinarily insufficient for denial of relief. Mogil v. Maryland Casualty Co., 147 Neb. 1087, 26 N. W. 2d 126; Davis v. Highway Motor Underwriters, 120 Neb. 734, 235 N. W. 325; Robinson v. Union Automobile Ins. Co., 112 Neb. 32, 198 N. W. 166. Equity insists, however, upon convincing proof of grounds for reformation. Beideck v. National Fire Ins. Co., 139 Neb. 171, 296 N. W. 873.

Liability of fire insurance companies was recognized without comment on underwriting considerations in situations that might have affected premium charges. State Ins. Co. v. Jordan, 29 Neb. 514, 45 N. W. 792 (loca-

tion of property); Kor v. American Eagle Fire Ins. Co., 104 Neb. 610, 178 N. W. 182 (removal of property); Home Fire Ins. Co. v. Gurney, 56 Neb. 306, 76 N. W. 553 (iron-safe clause); Home Fire Ins. Co. v. Fallon, 45 Neb. 554, 63 N. W. 860 (application misstating average value of grain). A coinsurance clause of a burglary policy was deleted without reference to adequacy of premium in Mogil v. Maryland Casualty Co., *supra*.

We recognize that equity secures the class of policy-holders from incursions on the insurance fund. The fact that the risk was underwritten for a fair premium militates against reformation. On the other hand equity secures the individual policyholder from unjust dis-appointments, considering the structure and function of the system of insurance marketing. Plaintiff in good faith relied on the misrepresentation in the atmosphere of the advertisement. See, Rubinson v. North American Accident Ins. Co., 124 Neb. 269, 246 N. W. 349; Farmers Mutual Automobile Ins. Co. v. Bechard, 80 S. D. 237, 122 N. W. 2d 86, 1 A. L. R. 3d 1124. In the totality of circumstances he had no duty to inquire. He has the controlling equities.

AFFIRMED.