Juanita A. JOHNSON, Appellee,

v.

UNITED INVESTORS LIFE INSURANCE COMPANY, Appellant.

No. 59535.

Supreme Court of Iowa.

March 22, 1978.

Shaff, Farwell & Senneff, Clinton, and Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, for appellant.

Jurgemeyer, Frey & Haufe and Petersen, Petersen & Eddy, Clinton, for appellee.

McCORMICK, Justice.

This is an appeal from a decree reforming a life insurance contract to eliminate an exclusion of double indemnity coverage for death while piloting a private aircraft. Defendant United Investors Life Insurance Company contends the trial court erred in holding it was bound by the knowledge and representations of its soliciting agent when it acted on the policy application and in

finding the evidence sufficient to establish a basis for reformation. We affirm the trial court.

Plaintiff's husband Merlin Swan Johnson applied through defendant's soliciting agent Eller Lutes for a $100,000 annual renewable term life insurance policy which was to include double indemnity protection for accidental death. Lutes took the application in the Johnson farm home on January 4, 1973. After receiving the application, defendant issued a policy with an effective date of February 8, 1973. It provided primary coverage of $100,000 and included a double indemnity supplement. Plaintiff was the policy beneficiary.

Merlin Johnson was killed while piloting a private aircraft on January 15, 1974. Shortly thereafter Lutes notified plaintiff she would receive $200,000 under the policy's double indemnity coverage. However, defendant instead subsequently issued a benefit check for $100,000 because of a provision in the double indemnity rider excluding double indemnity coverage of death resulting from piloting private aircraft.

This litigation resulted from plaintiff's contention her husband desired double indemnity protection while piloting private aircraft, communicated this wish to Lutes when making application for the policy, and was assured by Lutes the double indemnity provision would cover that activity. She sought reformation of the policy to eliminate the exclusion on the ground of mutual mistake and asked judgment for $100,000. After trial, the trial court granted the relief requested. This appeal followed.

I. *The soliciting agent's authority.* The question relating to Lutes' authority is not, as alleged by defendant, whether he had authority to waive an exclusion in the insurance policy. Instead it is whether his knowledge and representations in obtaining the application for insurance are binding on defendant for purposes of reformation. The conduct upon which reformation was sought allegedly occurred while Johnson was applying for the policy.

No dispute exists that Lutes was a soliciting agent for defendant. Nor could there be. See § 515.123, The Code; *Imperial Casualty & Indemnity Company v. Carolina Casualty Insurance Company,* 402 F.2d 41, 44 (8 Cir. 1968).

Our cases have uniformly held that a soliciting agent's knowledge and material declarations at the time an application for insurance is obtained are binding on the company and may serve as a basis for reformation. *Quinn v. Mutual Benefit Health and Accident Association,* 244 Iowa 6, 14, 55 N.W.2d 546, 550–551 (1952); *Lankhorst v. Union Fire Insurance Co.,* 236 Iowa 838, 20 N.W.2d 14 (1945); *Mortenson v. Hawkeye Casualty Co.,* 234 Iowa 430, 12 N.W.2d 823 (1944); *Green v. Phoenix Insurance Co.,* 218 Iowa 1131, 253 N.W. 36 (1934); *Smith v. National Fire Insurance Co.,* 201 Iowa 363, 207 N.W. 334 (1926); *Fitchner & Co. v. Fidelity Mutual Fire Association,* 103 Iowa 276, 72 N.W. 530 (1897); see *Metropolitan Casualty Insurance Co. of New York v. Friedley,* 79 F.Supp. 978 (N.D.Iowa 1948).

As the cases make clear, the rule is not based on the agent's actual authority to bind the company to particular coverage. Rather it is based on the fact that in acting upon an application for insurance the company is charged with the agent's knowledge and representations while exercising his actual authority to obtain the application.

The facts in the *Quinn* case are analogous to those in which defendant is alleged to be bound in this case. Plaintiff Quinn offered evidence she told a soliciting agent of the defendant insurer she desired a health and accident policy which would contain no restrictions based on the fact she was a woman, one which would cover any illness or accident. The agent, according to Quinn's evidence, assured her attorney he would obtain such a policy for her. The agent filled out an application which Quinn signed without reading. When he later delivered a policy to her she did not read it either. Subsequently she had surgery for a female problem and made a claim on the policy. The company denied coverage because the policy contained an exclusion applicable to such surgery. The trial court reformed the

policy to eliminate the exclusion and this court affirmed.

The court in *Quinn* held the insurer was charged with knowing what its soliciting agent knew and found the evidence established a basis for reformation:

> The company, acting through its authorized agent, Sullivan, knew what insurance plaintiff desired and ordered. To her Sullivan was the company, and according to everyday business practice she dealt with him and rightly so. While she admits that she did not read either the application or the policy, we hold that under our holdings, she was not negligent in that respect. She thought she was getting the protection she desired; Sullivan thought so. Under the record she was entitled to receive it. 244 Iowa at 15, 55 N.W.2d at 551.

Under the principles recognized and applied in *Quinn*, defendant in this case was bound by the knowledge and representations of Lutes when he obtained Johnson's application.

Other authorities are in accord. "The acts and declarations of a soliciting agent while writing an application for insurance are those of the company itself." 16 Appleman, Insurance Law and Practice, § 8698 at 213.

■ This is true even when the agent is mistaken. The mistakes of the soliciting agent are the mistakes of the insurer. *Id.* 1977 pocket part at 41; *Parry v. State Farm Mutual Automobile Insurance Co.*, 191 Neb. 628, 216 N.W.2d 875 (1974); *American Family Mutual Insurance Company v. Bach*, 471 S.W.2d 474, 479 (Mo.1971) ("The insurer is bound by the mistake of a soliciting agent."); 44 C.J.S. Insurance § 279 at 1114 ("A soliciting agent may be deemed to be an agent of the company within the meaning of this rule, so that, even though he is without power to issue a policy his mistake is deemed to be a mistake of insurer, and insurer cannot defeat reformation because of the limited powers of its agent."); 43 Am.Jur.2d Insurance § 359 at 410 (" * * * [M]ost courts hold that a policy may be reformed where it does not conform to the agreement of the parties, although the mistake, insofar as the company is concerned, was that of a mere soliciting agent with no power to write or to issue a policy.").

Defendant seeks to distinguish these authorities by citing cases holding a soliciting agent's actual authority to bind his principal does not go beyond the scope of his principal's authorized line of business. See, e. g., *Hockemeyer v. Pooler*, 268 Minn. 551, 130 N.W.2d 367 (1964). However, such cases are based on the rule that actual authority, express or implied, cannot exist unless the principal has capacity to enter the legal relation sought to be created by the agent. Restatement (2d) of Agency § 7, Comment a. Assuming, without deciding, that this rule would be a limitation on Lutes' authority, no evidence exists from which it could be found defendant lacked capacity to write the policy desired by Johnson.

Defendant offered evidence that neither it nor any other insurer in the industry did in fact write a policy providing double indemnity coverage for accidental death while flying private aircraft. However, the reason given for not doing so was the alleged difficulty in rating the hazard for premium purposes. The witnesses acknowledged aviation accidents were within the primary coverage of the policy and agreed $200,000 in such coverage could have been obtained. Thus, defendant did not show a lack of capacity to insure the risk. The rule relied on by defendant is inapposite.

■ A party seeking reformation does not have the burden to prove the insurer would actually have insured the particular risk or class of risk if its agent had not made a mistake. Reformation may be had to afford coverage of any lawful risk. *Heikes v. Farm Bureau Insurance Company of Nebraska*, 181 Neb. 827, 151 N.W.2d 336 (1967); *Kaiser v. Carolina Life Insurance Co.*, 219 S.C. 456, 65 S.E.2d 865 (1951). A court of equity may grant reformation even when the provision at issue is inhibited by statute, provided the statute does not make

it void and the parties are not in pari delicto. *Baldwin v. Equitable Life Assurance Society of the United States,* 252 Iowa 639, 650–651, 108 N.W.2d 66, 73 (1961).

We hold defendant was bound by Lutes' knowledge and representations when it acted upon Johnson's application for insurance.

■ II. *Sufficiency of the evidence.* Plaintiff sought reformation based on mutual mistake. It was her burden to prove by a preponderance of clear, satisfactory and convincing evidence that through mistake the policy failed to express the mutual intent of the parties. *Schuknecht v. Western Mutual Insurance Company,* 203 N.W.2d 605, 609 (Iowa 1973). In reformation cases involving insurance policies, less proof is required than in contract cases generally. *Baldwin v. Equitable Life Assurance Society of the United States,* 252 Iowa 639, 108 N.W.2d 66 (1961).

■ A mistake within the meaning of reformation doctrine "is a belief that is not in accord with existing facts." Restatement (2d) of Contracts § 293 (Tent. Draft No. 10).

Plaintiff's theory was that her husband and Lutes mutually intended the policy to provide double indemnity coverage for accidental death while piloting private aircraft. They were mutually mistaken, in plaintiff's view, in believing defendant would issue such a policy. Therefore, because Lutes' mistake is deemed the mistake of defendant, she contends she established the requisite basis for reformation.

Our review is de novo. We accord weight to trial court findings of fact but are not bound by them. We are particularly mindful, when credibility issues are involved, that the trial court had the advantage of seeing and hearing the witnesses.

Lutes met with plaintiff and her husband in the kitchen of their home at about noon on January 4, 1973. Johnson was a farmer and had been a licensed pilot since 1972.

Plaintiff testified as follows regarding the discussion concerning double indemnity coverage:

Q. Now, do you recall Mrs. Johnson any conversation about double indemnity or accidental death benefits between your husband and Mr. Lutes? A. Yes.

Q. Did Mr. Lutes explain what double indemnity meant? Yes.

Q. What did he say that it meant? A. In case of an accident the life insurance policy for $100,000.00 would pay for $200,000.00, but the $100,000.00 benefits, life insurance policy would pay $200,000.00.

Q. Now, was there any conversation about your husband's flying an airplane in connection with this insurance coverage? A. Yes, sir.

Q. What was that conversation? A. I, sir, asked Mr. Lutes specifically if my husband had enough flying hours in and about his rating as a pilot, whereupon, Mr. Lutes proceeded to get up from the kitchen table, go over to the couch; where his attache case was laying and from the case he took a small little black book. I did not see what was in this book before he turned to my husband and well, first he ran down the pages himself, then he turned to my husband and he said you have nothing to worry about.

Q. Did you ask Mr. Lutes specifically about the double indemnity benefit? A. Oh, yes, I did.

Q. What did you ask him about that? A. In case, God forbid, that there would be an accident, did the $100,000.00 policy with the double indemnity benefits would it pay the $200,000.00 and he was very reassuring that, yes, it would.

Q. Did you ask him anything about if the accident occurred while Merlin was piloting an airplane? A. Yes, sir. Many times over.

Q. And what did he say? A. He was very reassuring with his little booklet that my husband was thoroughly covered.

She said Lutes filled out the application and showed her husband where to sign it. She testified he signed it without reading it. She also testified her husband did not read the policy after it was issued.

After Johnson's death Lutes visited plaintiff. They agree he told her she would receive $200,000 under the double indemnity provision of the policy. He testified as follows:

Q. What did you tell her that she would be receiving under this policy at that time? A. I indicated to her she would be getting the accidental benefit.

Q. And how much was that? A. Would have been two hundred thousand.

It was only after defendant issued its benefit check in the lesser amount of $100,000 that Lutes informed plaintiff of the exclusion.

A friend of Johnson, John Christiansen, testified he had discussed Johnson's coverage with him several months before his death while the two were hunting. He testified as follows:

Q. Can you tell the Court the substance of this conversation? A. Well, Merlin and I went—were out hunting one day, we were just talking and just shooting the breeze and got talking about—we just mentioned insurance and he said yeah, you know how you talk when you don't expect any death or anything. Yeah, I'm worth more dead than alive and he told me what the—he said not too long ago he bought this $100,000.00 policy and had accidental death benefit in it. I told him, I said, "well, it won't pay if you're killed in the airplane though." He says, "No, the insurance agent says that didn't make any difference, I'm still covered by accidental death." I told him, "Well, years ago", I said, "I sold insurance for a company here in Clinton" and I says, "Maybe its different now than it was then" and he said, "Yeah,"—no, he say, "I'm covered if I fly the airplane." That was all the more we ever said about it. I thought, well, maybe they changed, but he was certainly under the opinion that he was covered for while he was flying his airplane.

Johnson's father testified regarding a similar conversation:

Q. And did you at that time have occasion to discuss what coverage he would have under the policy he would have if he was killed while flying the airplane? A. Well, I asked him, I said, "You know flying planes is dangerous" and he said, I know it and he said but I've got insurance to cover if anything should happen to me because he was farming my farm and I was interested in everything was going to be all right so I says, "How much insurance do you carry?" He said, "I carry $100,000.00. In case of accidental death that will pay me twice that much" he told me.

Q. And did he mention whether or not that accidental death included flying an airplane, in his opinion? A. He did, I said, "Does it cover you if your flying an airplane" and he said, "Yes, it does." He told me.

Lutes denied having discussed the exclusion with Johnson. He acknowledged Johnson requested double indemnity coverage. He also acknowledged he knew Johnson was a pilot, and he therefore obtained information from him to fill out an aviation questionnaire. On the questionnaire Johnson signified his willingness to pay a higher premium if necessary because of aviation to obtain the coverage he requested.

Lutes was asked if he personally was then aware of the exclusion. He said, "I would say yes." However, he also said this was the first policy he ever sold with an "aviation rider." He admitted he thought the double indemnity provision was applicable when he first visited plaintiff after her husband's death, and he did not change his mind until he received the $100,000 benefit check, called the Kansas City office of defendant, and was told of the exclusion. Under the whole record we believe it is more likely he was unaware of the exclusion when he solicited the application. We also believe plaintiff's version of the discussion which took place then is more credible.

Like the trial court, we find plaintiff proved her case for reformation.

This is true despite a fine-print disclaimer in the application of the agent's authority to bind defendant regarding policy benefits. Lutes admitted he did not call

this language to Johnson's attention, and the evidence is persuasive that Johnson did not read it. As is usual, the agent filled out the application and the applicant merely signed it where directed. Johnson was not negligent nor is reformation barred because of his failure to read the application. *Quinn v. Mutual Benefit Health and Accident Association,* supra, 244 Iowa at 14, 55 N.W.2d at 550. See Restatement (2d) of Contracts § 299 (Tent. Draft No. 10) ("A mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation * * *, unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.").

It is plain that Johnson wanted double indemnity protection while piloting aircraft. Lutes knew this and took the application on that basis. Therefore in passing upon the application defendant knew Johnson sought a policy which would include such coverage. Defendant thus had a duty either to issue a policy providing the desired coverage or to notify Johnson the coverage was unavailable. *Frohna v. Continental Insurance Companies,* 62 Wis.2d 650, 652, 215 N.W.2d 1, 2 (1974) ("mutual mistake is established when the party applying for insurance proves he made certain statements to the agent concerning the coverage desired, but the policy as issued did not provide the coverage"); 13A Appleman, Insurance Law and Practice, § 7609, 1977 pocket part p. 26. The case for reformation is even stronger when Lutes' representations are considered.

We agree with the trial court that plaintiff is entitled to reformation.

AFFIRMED.

All Justices concur except REES and Le-GRAND, JJ., who dissent.

REES, Justice (dissenting).

As I am unable to agree with the majority I must respectfully dissent. I would reverse the trial court and hold plaintiff is not entitled to reformation.

The defendant insurance company contends its agent Lutes was acting beyond the scope of his authority in his representations at the initial meeting with the Johnsons and therefore the company was not bound thereby. The record shows Lutes was a soliciting agent for the company and was not empowered to write policies as his agency contract and the application forms signed by Merlin Johnson indicated. It is also abundantly clear from the record that Johnson could not have obtained double indemnity coverage such as the plaintiff contends for in this case from either the defendant company or any other company in the insurance industry. I agree with the majority that aviation accidents were within the primary coverage of the policy and that Johnson could have obtained primary coverage for $200,000, but that double indemnity could not have been secured by him in any amount under any conditions. I cannot agree with the trial court's conclusion that even though Lutes did not have authority to change the terms and conditions of defendant's contract that such fact would not prevent the reformation of the policy.

We have spoken heretofore on the question of the authority of an agent to bind its principal in connection with attempts to reform insurance contracts. In *Den Hartog v. Home Mutual Insurance Association of Iowa,* 197 Iowa 143, 146–147, 196 N.W. 944, 945, we said, "the insurer will not be permitted to avoid the policy by taking advantage of a misstatement in the application material to the risk which is due to mistake or negligence of its agent, and not to fraud or bad faith on the part of the insured." However, in cases in which the insurer has been held to be bound by the knowledge of its agent, the insurance company, if it had known the facts, would have agreed to issue the policy coverage which through mutual mistake the insured thought he had. In *Quinn v. Mutual Benefit Health & Accident Association,* 244 Iowa 6, 55 N.W.2d 546, cited by the majority, the trial court merely held that the policy should be reformed to cover a condition the company would cover *if in possession of facts.* See also *Green v. Phoenix Insurance Company,* 218 Iowa 1131, 253 N.W. 36 (policy reformed to cover

mortgagee's interest irrespective of the identity of the real owner of property); *Smith v. National Fire Insurance Company of Hartford, Connecticut,* 201 Iowa 363, 207 N.W. 334 (policy allowed to be reformed to allow additional insurance); and *Fitchner v. Fidelity Mutual Fire Association,* 103 Iowa 276, 72 N.W. 530 (policy reformed to increase amount of allowed concurrent insurance).

Unlike the cases cited immediately above where it was apparent the insurance company would have issued a policy for the requested coverage if it had been apprised of the desires of the insured and which the insured mistakenly thought he had in this case even if the insurer had known what the insured wanted, the company would not have issued the desired coverage. It is also clear from the record that no company in the insurance industry would have provided the desired coverage which the plaintiff contends for in this case. Therefore, unlike the cases cited immediately above in which the insurance companies were trying to avoid liability to the insured solely because the agent was negligent in filling out the application, the matter before us here involves a defendant denying liability under the policy because it would not have issued the policy coverage desired in any case. The precedent cited above in which knowledge of the agent was imputed to the insurer is not, in my judgment, determinative of the issue in the matter before us now. I do not believe, as does the majority, that the rule relied on by the defendant company is inapposite.

We are required to determine whether Lutes, the agent of the defendant, had authority to bind the defendant company with his misrepresentations to the plaintiff's husband that the insurance policy provided double indemnity coverage if Johnson came to his death accidentally while piloting an airplane, contrary to the express terms of the policy as written.

I would hold that Lutes had no power to bind the defendant company by his representations to the insured which would have altered the terms and conditions of the defendant's policy. I do not feel it necessary to restate the principles of agency in detail as such principles were recently set out in *State v. Sellers,* 258 N.W.2d 292, 296–297 (Iowa 1977). It is clear to me Lutes had no express or implied authority to waive one of the terms in the double indemnity provision of the policy excluding recovery for accidental death while piloting an airplane, since such a limitation on the agent's authority was contained in the agency contract between the company and Lutes, as well as on the application form signed by the insured. It is also patently obvious to me that Lutes had no apparent authority to alter the terms of defendant's policy since it was clear to the insured that Lutes was a soliciting agent for the defendant and was empowered only to fill out the application form for the coverage desired. Such limited authority proceeding from the defendant to Lutes was apparent to the insured at the January 4, 1973 meeting when Lutes filled out the application form for the insured, which in and of itself revealed Lutes' limited authority. Any mistake of Lutes is not imputable to the defendant company with the result that the company was not a party to a mutual mistake between Lutes and the Johnsons, and it therefore follows plaintiff did not establish by clear and convincing evidence the existence of a mutual mistake between Merlin Johnson and the defendant company which would permit or allow reformation of the insurance contract to eliminate the exclusionary clause therefrom. Further, since Lutes acted beyond his authority, any inequitable conduct or fraud committed by him as agent of the defendant is not imputable to the defendant so reformation of the contract is not available to plaintiff on such grounds. Since there is no ground for a reformation of the contract, I would hold the decree of the trial court granting such reformation should be reversed under our de novo review of the record.

I would reverse the trial court.

LeGRAND, J., joins this dissent.